# MARIE H. MERCER, MARGARET W. SCHAPIRO, MARY M. HARDING AND CHARLES H. HARDING *vs.* SAFE DEPOSIT AND TRUST COMPANY, TRUSTEE, &c.

*Construction of a Deed of Trust—Vesting of Remainders—Limitation to Right Heirs—Power of Substituted Trustee to Terminate Trust—Rule in Shelley's Case.*

The owner of property executed a deed of trust by which his estate
was conveyed to trustees who were directed to pay the income to
the grantor during his life, and after his death to hold the property
for the use of different parties, according to certain designated con-
tingencies.   The contingency that did occur was thus provided for

If the said M. shall leave a widow living at the time of his death and no children or descendants then living, the said trustees shall hold the said property, with the same powers, for the use and benefit of said widow during her life or widowhood; and at her death, or on her marriage again, then said trustees shall hold said property to and for the use and benefit of the right heirs of the said M. according to the laws of the State of Maryland. The primary object of the deed was to promote the convenience of the grantor, who contemplated a residence abroad, and not to protect interests in the property after his death. *Held,* that since the law favors the early vesting of estates, those persons who were the heirs of the grantor at the time of his death then took vested remainders in the property, subject to the life-estate of his widow.

The above-mentioned deed of trust also provided that "if at any time during the continuance of the aforesaid trust it shall appear to the said trustees that it is for the benefit of the party or parties for whose use the aforesaid trust has been created, that the said trust should terminate, then the said trustees may reconvey said property upon a proper release from the party or parties who are then entitled to the use and benefit of said property." The execution of the trust became vested in a substituted trustee, the original trustees having either died or resigned office. *Held,* that this power to terminate the trust was not a special confidence reposed in the original trustee but is annexed to the office of trustee, and may be exercised by the substituted trustees.

A deed of trust directed the trustees to pay the income of the property thereby conveyed to the grantor during his life, and after his death to hold the property for the use of the grantor's widow during her life, and at her death to hold the property to and for the use and benefit of the right heirs of the grantor. *Held,* that since the grantor's life-estate was an equitable estate and the remainder to the heirs a legal estate, the rule in *Shelley's case* does not apply, and the limitation over to the heirs was good as a contingent remainder, and that upon the death of the grantor the interests of the persons then answering the description of his heirs became vested remainders, being a present fixed right to the estate upon the death of the widow.

Appeal from a *pro forma* order of the Circuit Court of Baltimore City.

The cause was argued before McSherry, C. J., Fowler, Briscoe, Page. Boyd, Pearce, Schmucker and Jones, JJ.

*George Whitelock* and *Edward I. Koontz,* for the appellants.

The deed under consideration was passed upon and the identical question as to the nature of the title of the appellants was definitely and finally adjudicated by this Court in the case of *Mercer* v. *Hopkins*, 88 Md. 292, which determined the very law of this case. *Mitchell* v. *Mitchell*, 6 Md. 234. The lower Court had decreed in *Mercer* v. *Hopkins* that the interest of Samuel H. Mercer in the property on South Frederick street had vested in him under the will of Johns Hopkins, *and was vested in Lewis N. Hopkins · as surviving trustee under the deed for the purposes therein specified.* It was contended in that case in behalf of the appellant, Marie H. Mercer, that her husband took an absolute estate, both under the rule in *Shelley's case* and by way of resulting trust; but this Court held, first, that the rule in *Shelley's case* did not apply, because the grantor's estate was equitable, and his right heirs' estate was legal, and secondly, that he did not take by way of resulting trust, because *under the provisions of the deed an estate in fee vested in his right heirs.*

There is absolutely no purpose indicated upon the face of the Mercer deed, nor is there anything that by any rational construction can be implied from its terms to place it outside of the operation of the settled rule that an expectant estate should vest at the very earliest possible moment. *Waters* v. *Waters*, 24 Md. 444; *Meyer* v. *Eisler*, 29 Md. 28; *Tayloe* v. *Mosher*, 29 Md. 456; *Branson* v. *Hill*, 31 Md. 191; *Dashiell* v. *Dashiell*, 2 H. & G. 130. The rule favoring the earliest possible vesting of estates is historically correct, in the stability that it has afforded to titles. This rule rests upon the high ground of uniform public policy, in the advancement of which the Courts have not hesitated to strike down wills and deeds rather than to permit the perpetuation of property interests *extra commercium* and contrary to law ; and its application to this case would serve to illustrate the wisdom of its uniform recognition by our Maryland Courts as a sound rule of construction, coming to the aid of, and not as a menace to the grantor's intent. *In re Stickney's Will*, 85 Md. 103; *Crisp* v. *Crisp, post.*

If Samuel H. Mercer intended to postpone the vesting of the estate in remainder until the death or remarriage of his widow it could have been for no other reason than to let in his after-born right heirs who might be born in the interval between his death and her death or remarriage. It cannot be seriously contended that, when Mercer executed the deed, he meant by " his right heirs " his own posthumous issue. Nor is it to be lightly taken for granted that Mercer then preferred the claims of unborn and unknowable nephews and nieces and their possible descendants, constituting a purely mental concept of a class, to the stronger ties founded in the closer kinship of his own living sisters. Upon this assumption the appellee would be forced at the oral argument, if not in its brief, to maintain that the grantor, in imposing upon the estate given to his widow a limitation in perpetual restraint of her remarriage, intended to make that very event which he had thus sought to prevent, an appropriate moment at which it should be for the first time made manifest who were the ultimate objects of his bounty. Such a provision would have been entirely valid, however singular and frivolous it might seem, in view of the other terms of the deed, and in the absence of any consistent motive, either apparent or conceivable. It is sufficient, however, to know that the grantor did not declare or suggest any such purpose, and, therefore, cannot be said to have entertained it. *Crisp* v. *Crisp*, 61 Md. 150.

Every inference that can be fairly made from the context of the undisputed portions of the deed strengthens the position that by " right heirs of Samuel H. Mercer, according to the laws of the State of Maryland " he meant a class that the laws of the State of Maryland would ascertain to be his heirs, not by referring to the state of his pedigree and to the state of the law at the time of his wife's death or remarriage, but by looking for the heir of an unoccupied estate at the very instant its last possessor died, at the instant when the descent was cast at common law. *Buck* v. *Lantz,* 49 Md. 442.

The vesting of the remainder in the appellants depended upon the happening of a single contingency (the death of Mercer without issue), which has already occurred; only those who were *in esse* at that time (the grantor's sisters), can take. *Buck* v. *Lantz, supra; Numsen* v. *Lyon*, 87 Md. 41. There is not the least manifestation of a purpose to make alternative gifts, preceding a life-estate, upon which they are to depend; as was the obvious intention in *Straus* v. *Rost*, 67 Md. 475, and in many other cases that might be cited and which are as easily distinguishable from one another as they are from this case. The very words used in creating the widow's life-estate are the phraseology of limitation and not of condition.

The character of the trust required the appointment of another trustee. *Code*, Article 16, sec. 212; *W. M. R. R.* v. *Goodwin*, 77 Md. 278; *Gray* v. *Lynch*, 8 Gill, 425. The power to terminate the trust is a special one, in the nature of a trust, and the Court may execute it if the trustee fails to do so. *Druid Park Heights Co.* v. *Oettinger*, 53 Md. 50. The words used in making the trust, as well as its objects, exclude the theory of " personal confidence." Although the power is no doubt discretionary, it is annexed to the office. *Safe Dep., etc.*, v. *Sutro*, 75 Md. 365; *Johns Hopkins University, etc.*, v. *Middleton*, 76 Md. 205. If it was not competent to transfer this power to the new trustee it was not competent to appoint a new trustee for any purpose. Because the termination of the trust was as much intended for the benefit of the parties entitled as any other stipulation in the deed, was a binding and *integral* covenant of the deed, and was an essential part of its whole scheme. *Perry, Trusts* (9 ed.), sections 505, 508. If it was not competent to transfer the power to terminate the trust, the trust itself either terminated with the retirement of the surviving trustee, or assumed a permanent character which was foreign to all of its purposes. If the trust has then become impossible of performance, the appellants are entitled to a conveyance, outside of the terms of the deed in aid thereof. *Perry, Trusts*, sec. 920.

*Charles McH. Howard*, for the appellee.

The limitations in remainder made by the deed were undoubtedly contingent in the first instance upon the survival of a family or not at the death of the grantor. It is the common case of remainders limited alternatively upon a contingency with a double aspect; or rather in this case a four-fold aspect: the dying of Samuel H. Mercer, leaving widow, but no children; leaving children, but no widow; leaving both widow and children, or leaving neither widow nor children. Had the instrument been a will instead of a deed taking effect in the lifetime of the grantor, this would not have been the case, for the contingencies would have been determined at the death of the testator, at which time the will would take effect. This distinguishes the present case from the case of *Crisp* v. *Crisp*, 62 Md. 149, in which the remainder was a vested remainder. The unusual feature in the present case is that the period at which this contingency is determined (the death of Samuel H. Mercer), and the period at which the estates in remainder are to take effect in possession (the death of his widow) are not identical. Hence, the question is whether the class is to be ascertained as of the first period or as of the latter, a point upon which there is no precise determination in this State.

In the case of *Mercer* v. *Hopkins*, 88 Md. 312, above cited, the rule is stated that only those take who answer to the description at the time when the estate is to come into possession. While in the case of *Demil* v. *Reid*, 71 Md. 175, the time when the contingency happens only is mentioned. This rule as to the time for ascertaining who are to take a contingent remainder limited to a class of "heirs," seems to be identical in principle with the rule that when an individual to whom a contingent remainder is limited dies, the remainder descends to his heirs ascertained in a similar manner. The cases enunciating this rule state that those heirs are to take who answer to the description at the time when the contingency happens, *and when the estate is*

*to come into possession.   Garrison* v. *Hill*, 79 Md. 81; *Buck*
v. *Lantz*, 49 Md. 445.   This principle was adopted in this
State upon the authority and reasoning of *Barnitz, Lessee,*
v. *Casey*, 7 Cranch, 469, quoted in the above cases, in which
JUDGE STORY says, that '' the rule was adopted in analogy
to that rule of descent which requires that a person who
claims a fee-simple by descent from one who was first pur-
chaser of the reversion or remainder expectant on a free-
hold estate must make himself heir of such purchaser *at
the time when that reversion or remainder falls into pos-
session.''*

It will be seen, therefore, that it was the vesting in pos-
session rather than the vesting in right to which the reason-
ing applies.   The intention that the remainders in the
present case should not vest until the termination of the
trust is further indicated by the words which the testator
has employed in limiting them, when he says that *at* his
wife's death or *on* her marriage said trustee shall hold the
property for the use, etc., of his right heirs.   In the case
of *Bailey* v. *Love*, 67 Md. 602, it was held that the language
"*from* and *after* the death of any child, then, I give the
share to which such child was entitled to the child or
children of such child," indicated with great force and dis-
tinctness that no vested estate was intended to be given
until the arrival of that period.   It is contended, we believe,
that the question whether the remainders in the present
case are now vested or not, was decided by this Court in
the case of *Mercer* v. *Hopkins*, above cited, where the Court
said in speaking of this instrument that "an estate in fee
vested in his (Samuel H. Mercer's) right heirs."   An ex-
amination of that case will show, however, that the word
vested was not there employed in the technical sense of
vesting in right, and that the question was not passed upon
by the Court.   The Court was here speaking of the effect
of the deed *at the time when it was executed,* and in saying
that it then vested an estate in fee in his right heirs it could
not have employed the word in this sense, for until the

death of Samuel H. Mercer the remainder to his heirs was necessarily contingent, being dependent upon the contingency of his leaving no children. And the question now presented was not properly before the Court.

As to the power to terminate the trust. Where the power relates to the office, and is given to enable the trust estate to be properly administered, as, in most cases, powers of sale, etc., over the *corpus* of the estate, it is ordinarily considered as belonging to the office of trustee, and may be exercised by a successor, though not expressly extended to such successors by the instrument. *Safe Deposit and Trust Co.* v. *Sutro,* 75 Md. 361; *Druid Park Heights* v. *Oettinger,* 53 Md. 46.

But where the power is personal in its nature, and is to be exercised only as a matter of personal judgment, then it does not devolve upon a successor to the original trustee, unless an intention to that effect is expressly shown in the instrument creating the trust. Thus, in a trust settlement of property for a married woman, where she was given power to sell any part of the property and appropriate the proceeds, with the consent of the trustee, it was held that the power to give such consent did not pass to a subsequent trustee. " It is perfectly well settled by the authorities that where the consent of any person is required to the execution of a power, the condition must be strictly complied with ; and if the person, whose consent is necessary, die before the execution of the power, and without having assented, the power is gone." *Powles* v. *Jordan,* 62 Md. 499.

Even a discretionary power as to investments to be selected has been held in two cases not to devolve upon a substituted trustee. *Lowe* v. *Convention,* 83 Md. 412; *Zimmerman* v. *Fraley,* 70 Md. 568. See also *Gambell* v. *Trippe,* 75 Md. 252, 255.

If, therefore, we apply these principles to the present case, it is too plain for argument, it is submitted, that the power here given belongs to the latter class, and cannot be exercised by any one other than the original donees. The deed

recites that the trustees named therein are the grantor's " near relations and friends,". and have agreed to accept the trusts " for the natural love and affection they bear the said Samuel H. Mercer, etc. "   Wherever the estate given the trustees is defined, it is expressly extended to the survivor, his heirs, etc.; but where this power is conferred, it is only expressed as given to " said trustees. "   And the power itself is not in any sense one given for the better management of the property, but is strictly personal in its character, and concerns the *cestuis que trustent*, like the instances given as examples in *Safe Deposit* v. *Sutro*, 75 Md. 365, of a power to make or withhold a gift, or consent to a marriage. It is practically identical with the power in *Powles* v. *Jordan*, *supra*.

JONES, J., delivered the opinion of the Court.

The appeal in this case, which is from an order passed *pro forma* by the Circuit Court of Baltimore City, brings up for construction by this Court the deed of Samuel H. Mercer, now deceased, to Lavinia Hopkins and others in trust for the purposes declared therein.   This deed, which bears date the 16th day of February, 1884, recites and grants as follows :   " That whereas the said Samuel H. Mercer is about to leave this country and take up his residence in Europe, and whereas it is greatly to the interest of the said Samuel H. Mercer to leave his estate properly managed and controlled by some responsible person here, and whereas he is indebted unto the said Lavinia Hopkins and others, and is desirous to pay his just debts, and having desired the said Lavinia Hopkins for and during the period of her natural life and on her death the said Lewis N. Hopkins and A. Stirling Pennington, his near relatives and friends, to accept the trusts hereinafter provided, he has agreed with the said Livinia Hopkins, Louis N. Hopkins and A. Stirling Pennington to execute this deed, and the said Lavinia Hopkins, Lewis N. Hopkins and A. Stirling Pennington having agreed to accept the said trust for the

natural affection they bear the said Samuel H. Mercer and for the compensation hereinafter provided. Therefore in consideration of the premises and agreements and advance of six hundred dollars to be paid by the said Lavinia Hopkins to the said Samuel H. Mercer in equal monthly instalments of one hundred dollars per month dated from the first day of January, 1884, to the first day of July, 1884. Two hundred dollars of which has been paid by the said Lavinia Hopkins to the said Samuel H. Mercer before the execution of this deed, said loan to be paid as hereinafter provided. The said Samuel H. Mercer doth hereby grant and convey unto the said Lavinia Hopkins for life, and on her death the said Lewis N. Hopkins and A. Stirling Pennington and the survivors, his heirs, executors and administrators, jointly, in trust all his, the said Samuel H. Mercer's, property real, personal and mixed of whatsoever description and wheresoever situate, to have and to hold unto the said Lavinia Hopkins for life, and on her death unto the said Lewis N. Hopkins and A. Stirling Pennington and the survivor, his heirs, executors and administrators jointly in trust and confidence to and upon the uses and limitations and with the powers, to wit:" It then goes on with care and particularity to confer upon the trustees in express terms the power to " collect and receive the income, rents and profits " of the property conveyed and without being responsible for or charged with any debts, transfers or incumbrances," which the grantor might make, " to expend or cause to be expended for the use and benefit " of the grantor "or to pay over, as in their judgment shall be best, the entire amount of income," &c., to the grantor, " provided however," that the trustees " shall not be obliged to expend for the use and benefit " of the grantor, " or to pay over" to him " a sum or money greater than four-fifths of the income ; " and to apply the balance of the income " to the payment of the loan of six hundred dollars made by the said Lavinia Hopkins " to the grantor, with the interest to accrue, " and to the payment of such other

debts " as were then due by the grantor with " full power
and authority to settle, pay and compromise all ·debts "
which in the judgment of the trustees were " just and
owing " by the grantor, and to charge the same upon all
moneys accruing as income to ·the grantor.   Then after
allowing to the trustees a commission out of the income to
come into their hands the deed finally provides as follows :
" It is further mutually agreed and understood that if the
said Samuel H. Mercer shall leave a widow living at the
time of his death and leave no children or descendants liv-
ing at the time of his death, then the said trustees shall
hold said property with the same powers in the trustees for
the use and benefit of said widow during her life or widow-
·hood, and at her death, or on her marriage again, then said
trustees shall hold said property· to and for the use and·ben-
efit of the right heirs of the said Samuel H. Mercer, accord-
ing to the laws of the State of Maryland.   If the said
Samuel H. Mercer shall die leaving a child or children, or
descendants living at the time of his death, but leaving no
widow living at such time, then to said trustees in trust for
such issue *per stirpes*.   If said Samuel H. Mercer shall die
leaving a widow and child, children or descendants living
at the time of his· death, then to said trustees in trust to and
for the use and benefit of such widow and children and
descendants·in the manner and proportion which said widow,
children and descendants would be entitled *per stirpes* under
the laws of the State of Maryland if said Samuel H. Mercer
had died intestate seized of said property.   If said Samuel
H. Mercer should die leaving at the time of his death
neither a. widow or children or descendants living at such
time, then in trust for the right heirs of the said Samuel H.
Mercer by the laws of the State of Maryland.   It is finally
mutually agreed and understood that if at any. time during
the continuance of the aforesaid trust it shall appear to the
said trustees that it is for the benefit of the party or parties
for whose use and benefit the aforesaid trust has been cre-
ated that the said trust should terminate, that then the said

trustees may reconvey said property upon a proper release from the party or parties who are then entitled to the use and benefit of said property."

The order of the Circuit Court was passed in a cause therein pending which was instituted to procure a sale of certain leasehold property in Baltimore City, for the purpose of making distribution and reinvestment of the proceeds thereof. In this property Samuel H. Mercer acquired, under the will of the late Johns Hopkins, an interest which became subject to the operation and effect of the deed here to be construed. A decree for sale having been passed in the cause and a sale having been made thereunder, it was ascertained in the distribution of the fund produced thereby that the share of this fund which was subject to the deed of Samuel H. Mercer amounted to $472.76-100. A petition was then filed by the appellants alleging that Samuel H. Mercer had died leaving surviving him no children or descendants, but leaving the appellant Marie H. Mercer, his widow, and the appellants, Margaret W. Schapiro and Mary M. Harding, his sisters, who are his sole right heirs and next of kin ; and asking that the said share of the fund so representing the interest therein that passed under the deed of Samuel H. Mercer be distributed directly to them discharged of the trust created by said deed. In support of this prayer of their petition, they allege that the said sisters of the deceased grantor have an absolute vested interest in the share of the fund in question, that all parties in interest are desirous of having the said share distributed and paid over directly to the parties entitled thereto, and to have the trust created by the deed of the 16th of February, 1884, terminated, and that the appellee, being the trustee substituted by order of Court in the place of the original trustees, two of whom have died and the survivor having relinquished the trust, deems it for the benefit of the parties for whose use and benefit the trust was created that the said trust should terminate. The appellee, in its answer to this petition, admits the allegations

thereof, and after giving a statement of the property now held by it, exclusive of the sum of money mentioned in the petition, subject to the deed of trust and expressing doubts as to the true construction of the said deed and as to its power thereunder, as substituted trustee, to terminate the trust, avers that "so far as it is authorized by said deed and so far as it can do so without committing a breach of the trusts assumed by it," it consents to the disposition of the fund asked for by the said petitioner.

Upon these facts two questions are presented for the consideration of this Court.

1st. Whether those who answered the description of heirs at the time of his death took, at his death, a vested interest in the property conveyed by the deed of Samuel H. Mercer, of the 16th of February, 1884.

2nd. Assuming that they did, whether the trustee, now substituted in the place of the trustees named in the deed, is invested with the power and discretion to terminate the trust under the concluding clause of the deed.

We think both of these questions are to be answered in the affirmative. The law favors the early vesting of estates. This is a familiar rule of law which has been frequently recognized and enforced in the decisions of this Court. In the case of *Tayloe* v. *Mosher et al.*, 29 Md. at p. 456–7, this Court said : " The law favors the vesting of estates and to make an estate contingent *it must appear* from the language used and the nature and circumstances of the case that the time of payment was made the substance of the gift, and that the testator meant that time as the period of vesting." And again at page 457, " Estates will be held to be vested wherever it can fairly be done without doing violence to the language of the will, and to make them contingent there must be plain expressions to that effect, or such intent must be so plainly inferrible from the terms used as to leave no room for construction." Equally emphatic is the language of the Court in the case of *Crisp, Trustee,* v. *Crisp et al.*, 61 Md., where at page 152 it is said : " In the ab-

sence of plain expressions, or an intent plainly inferrible
from the terms of the will, the earliest time for the vesting
will be adopted where there is more than one period men-
tioned in the will." In the same case it is also said: " The
testator has ample power to fix the period of vesting to suit
himself (always within the rules the law fixes), but he must
indicate his wish with reasonable certainty, for if he does
not the law will presume he intended the earliest time." If
the law is thus exacting in respect to the question now be-
ing considered, in construing wills, where it is always in-
dulgent to the intent of the testator, it will certainly be no
less strict in its application to the construction of a deed,
under which the question arises here. Now looking to the
language of the deed we are construing, we look in vain
for the " plain expressions," that " leave no room for con-
struction," and indicate " with reasonable certainty," that
the earliest time for the vesting of the interest which his
heirs were to take, in the contingency that has happened,
was not intended by the grantor therein. On the contrary
looking to the language of the deed, the character of its
provisions, its declared purpose and its whole scheme in
connection with " the nature and circumstances of the
case," just the contrary is indicated. The object of the
deed, as expressed therein and clearly manifested in its
provisions, was mainly for the use and benefit of the grantor
himself, to promote his personal purposes and to serve his
convenience, and as long as he should live. It was to
enable him to promote his comfort and pleasure by a resi-
dence abroad, to have in the meantime his property interests
cared for and managed by competent persons, to get his
debts paid, to secure the accommodation of the advance of
money made to him by his relative and trustee and to make
provision for its repayment. For all of these objects very
careful and express provisions are made in the deed, and it
is very evident that these were the primary considerations
that were in the mind of the grantor in making it, and that
those that suggested the limitations over after his life-estate

were incidental and secondary.    The deed manifesting in
its provisions no evidence of having been conceived and
executed with any direct reference to subjecting the
grantor's property to ultimate limitations, or to creating
and protecting future interests in the property, but rather
for the personal purposes of the grantor himself, as already
indicated, there would seem to be no good reason for im-
puting to him a purpose, when limiting his property over,
after the main object of his deed had been served, of having
a care for remote and uncertain objects of his bounty,
rather than of providing that the limitations should have
the effect to immediately vest his property in those who
were nearest to him in blood and kinship, and who would
more naturally be objects of his consideration.    Not only
is this so, but the deed furnishes affirmative, intrinsic
evidence that the grantor intended that, upon the determin-
ation of his equitable life-estate, the title to, and interest in,
his property should thereupon vest in those who in ordinary
course would have taken the same in case he died intestate
and the deed involved in this controversy had not been
executed, subject only to the provision made for his widow
in the contingency which has now happened ; for in pro-
viding for the four several contingencies that might happen
at his death, in every one, except the one which has now
actually happened, he provided that the property should go
to the same persons, and be enjoyed by them in the same
manner, and in the same proportions as the law itself pro-
vided in case he had died possessed of the property and
intestate.    In the contingency that has actually happened,
it is reasonable to suppose, that if in making the provision
for his widow during life or widowhood, the grantor in-
tended that his estate should not vest in those who might
be his heirs at the time of his death, after indicating just the
contrary in respect to all the other contingencies that he
provided for, he would have made this appear without a
resort to construction ; and in order to exclude the period
of earliest vesting, the rule of law laid down in the authori-
ties quoted required this of him.

In ascertaining the intention of the grantor, there is force also in the suggestion of the counsel for appellants that an intention to postpone the period of the vesting of his estate beyond the time of his death and to leave it uncertain during the life or widowhood of his widow in whom the estate was finally to invest, is inconsistent with the covenant and provision in the deed in question that the trust may be terminated when deemed "for the benefit of the party or parties for whose use and benefit" the trust was created. From any fair construction therefore of the deed here in question we can discover no intention of the grantor to postpone the vesting of his estate beyond the period of his death.    Now what did he actually do, or rather what are the legal results of what he did, in the way of limiting over his estate after his death ?    By his deed the grantor gave the legal estate in his property to the trustees named in his deed, and created for himself an equitable life-estate, with a contingent remainder to his right heirs, upon his dying leaving no children or descendants, or widow living at the time of his death ; or in case of his leaving no children so living, and leaving a widow surviving him, then after providing the equitable life-estate for himself, he gave an equitable life-estate to such widow and remainder to his right heirs.    As the preceding life-estate in the grantor was an equitable estate, and the remainder to the heirs a legal estate, this limitation is not within the rule in *Shelley's case*, and the limitation over to the heirs was good as a contingent remainder.    *Mercer* v. *Hopkins*, 88 Md. 309–310, and cases there cited, 4 Kent, 210–11 (marg.)    Now when the contingency provided for in the deed, of the dying of the grantor without children or descendants, and leaving a widow, happened, no other contingency was to happen to let the heirs of the grantor into the enjoyment of the estate than the death of the widow, and the heirs therefore became entitled to the remainder, with no uncertainty in regard to it, other than the uncertainty as to the time of the enjoyment of the estate, which depended on an event that must

happen. This is the distinguishing quality of a vested re-
mainder. If there is "a present fixed right of future enjoy-
ment," the remainder is vested. Clearly, that is the position
of the heirs of Samuel H. Mercer in this case, as respects
the remainder limited to them by the deed here under con-
sideration. By the happening of the only contingency pro-
vided by the deed, upon which their *right* to the remainder
depended, the remainder became vested, only leaving uncer-
tain the time of the enjoyment. In other words, they have
now a vested remainder, which is an "actual estate." 4
Kent, 205 (marg.) This is easily distinguished from the
cases to which reference was made by the counsel for the
appellee, where it was said that when a contingent remainder
is limited to a class, only those can take who answer the
description at the time the contingency happens, "*and when
the estate falls into possession.*" Those were cases where
the happening of the contingency upon which the right to
the remainder depended, and the "falling into possession,"
were simultaneous. There was no vested remainder or
estate prior to the falling into possession, because the con-
tingency upon which the *right* depended had not previously
happened. Whether looking, therefore, to the intention of
the grantor, as manifested upon the face of the deed here
being considered, or to what appears to be the clear legal
effect of the provisions contained therein, we are of opinion
that the heirs of Samuel H. Mercer, the said grantor, who
are here before the Court, have a vested title to the property
granted in the deed, and subject to the trust thereby cre-
ated, subject only to the life-estate of the widow of the said
grantor, as the same is limited in and by said deed.

It remains for us to consider whether the appellee, the
substituted trustee, is authorized to terminate the trust
under the deed here in question, by virtue of the power
conferred by the grantor upon the trustees to so terminate
it, which has already been cited. It is agreed on all hands
that the condition described by the grantor, upon which he
authorized the trust created by him to be terminated, now

exists, and the only question is whether this authority to terminate the trust was intended to be confided solely to the judgment and discretion of the trustees originally named, or whether it passed with the trust to the substituted trustee. Such a question is always one of intention, depending upon the construction to be given to the instrument by which the trust is, in the particular instance, created. *Safe Deposit Co.* v. *Sutro*, 75 Md. 361. If upon such construction of the instrument it appears that a power lodged with the trustees in connection with the trust is a special confidence reposed in this particular trustee or set of trustees, or is to be exercised only upon his or their personal judgment and discretion, such power can only be exercised by the designated donees, and will not pass to a substituted trustee. On the other hand, if it appears that the power is annexed to the office of the trustee, for the purposes of the trust, and to promote its objects, then it will pass with the trust to the successors of the original trustees, and can be exercised by them. To the latter class of powers must be referred the power here in question. This power is not such a one as, in itself, would indicate mere personal confidence, and it was designed to be exercised upon a condition with respect to the trust and those interested in it that it may be supposed the grantor thought might well and safely be referred to the judgment and discretion of any competent trustee. It is indefinite as to the time of its exercise, and it may well be supposed the grantor contemplated that changes in those in charge of the trust might occur before the condition arose in view of which the power was to be exercised, and supposing this, it is significant that if he intended a mere personal power that he did not plainly make it so. In conferring the trust upon the trustees he gave it to the first-named trustee for life, then to the others named and to the survivor, " his *heirs, executors and administrators.*" Here was an express provision in the deed for the continuance of the trust in the hands of other persons than the trustees specifically named, and when he came to

confer the power to terminate the trust he provides, "that if *at any time* during the continuance of the trust it shall appear to *said trustees*," &c.   It is to be noted here that although, as we have seen, he provided that others might succeed to the duties of the trust he does not provide that this power is only to be exercised while the trustees named by him are in office but, "*at any time during the continuance of the trust*" and the general term "said trustees" is used to denote those who are to exercise the power, which is broad enough to include such trustees as might be in charge of the trust when the conditions, described in the deed as authorizing its exercise, should arise.   In defining other powers and duties of the trustees in connection with the trust, the grantor uses the language, it is "mutually agreed and understood" that the particular thing should be done.   In conferring the power in question he uses the same language.   This is not the language in which mere personal confidence would ordinarily be indicated, but is rather that which would be employed if the idea was to make the particular agreement of the substance of the trust.   For these reasons, and in the light of the nature and objects of the trust, in connection with which the power under consideration was granted, and the obvious reasons that may be deduced from these, why the grantor may be supposed not to have designed the exercise of this power to terminate the trust to be confined to the trustees specially named in his deed, we are of opinion that the power in question in this case is annexed to the office of the trustees and has passed with the trust to the appellee in this case, as substituted trustee, and can be exercised by it.

It follows from the foregoing views that the *pro forma* order of the Circuit Court of Baltimore City must be reversed and the cause remanded to that Court that a decree may be passed in conformity with the views herein expressed.

*Order reversed and cause remanded.*

(Decided March 23rd, 1900.)