HIRAM W. FRIEDENWALD et al.,
ADMINISTRATORS *c. t. a.,*

*vs.*

EDWARD H. BURKE, Special Administrator.

*Caveat to will*: *no real contest; administrator ad litem to defend will and represent infants; special administrator; jurisdiction of Orphans' Courts; counsel fees; costs. Appeals*: *costs; where record has been needlessly encumbered.*

. Where there is no real contest over the caveat to a will, and neither the caveators nor the caveatees are opposed to having the will set aside, the Orphans' Court may appoint an administrator *pendente lite* or *ad litem,* for the purpose of defending the will, to the extent that he may deem proper. p. 161

Administrators *pendente lite* usually have charge of the estate of the decedent until the suit is ended. p. 162

An administrator *ad litem* may be appointed "charged with the sole duty of defending the alleged will, to the extent that he, in his independent judgment, should deem proper, to secure for it admission to probate, if that is attainable on full and fair investigation." p. 162

A special administrator *ad litem,* who is not charged with the assets of the estate, but who acts as attorney in the case, incurs no greater liability than the costs of the contest, and which he would be responsible for as attorney; and if engaged in the defense by direction of the Court, he will be protected from costs. pp. 163-164

Where the Orphans' Court appoints an attorney as special administrator to defend a will, it is to be supposed that it was intended he should act in the matter as attorney also.     p. 164

And in such a case the administrator should be compensated for his services to the estate, both as attorney and as administrator.                                                          p. 164

While a certificate, signed by responsible and leading members of the Bar, is entitled to great weight in aiding a Court in fixing the amount of compensation which an attorney should receive out of the fund, it is not conclusive.          p. 164

When an *ex parte* order has been passed by the Orphans' Court, fixing the compensation of an attorney, and those interested in the estate promptly object, on the ground that it is excessive and unreasonable, and pray that the order may be revoked, they are entitled to be heard.          p. 164

Unless it be for an amount that is unreasonable and excessive, the Orphans' Court has the authority to fix the compensation which an attorney should receive for services to the estate. p. 166

The fact that one of the parties to an appeal improperly inserts a pleading or paper that takes up a large part of the record, may be considered in apportioning the costs.          p. 167

On an appeal from an order of the Orphans' Court fixing the compensation of an administrator who also acted as attorney, the case may be remanded for the purpose of having further proceedings taken, without either affirming or reversing the order.                                                        p.167

*Decided December 19th, 1913.*

Appeal from the Orphans' Court for Baltimore County.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Louis N. Frank* and *Edgar H. Gans,* for the appellant.

*T. Scott Offutt,* for the appellee.

BOYD., C. J., delivered the opinion of the Court.

A caveat to the last will and testament of Joseph Frieden-wald, dated December 12th, 1910, resulted in the will being set aside on the ground of lack of testamentary capacity. Subsequently a caveat was filed to a prior will, dated April 24, 1903, by four of the heirs and next of kin of the testator against the others—representing in all thirteen interests in the estate. The caveatees filed an answer from which it was apparent that they were not opposed to having the will of 1903 set aside and it was therein said: "The only persons who might be interested in sustaining the will of 1903 are the grandchildren of the late Joseph Friedenwald, and their de-scendants, born and unborn, who have contingent interests under said will, and these interests should be represented by some person appointed by the Court to defend the will, at the cost of the estate, to the extent that such person, in the exer-cise of his independent judgment, in view of all the circum-stances. of the case, shall deem proper."

On the 9th of January, 1913, the Orphans' Court of Balti-more County issued letters of administration to the appellee as follows:

"Know ye that Joseph Friedenwald died leaving an alleged will dated April 24th, 1903, which has been offered for probate in this Court, and a caveat has been filed thereto, and that someone should be appoint-ed by this Court to defend the said alleged will, at the cost of the estate, in the interest of the grandchildren of the said Joseph Friedenwald and their descend-ants, born and unborn, who may have contingent in-terests under said will, to the extent that such person in the exercise of his independent judgment in view of all the circumstances of the case shall deem proper.

"Therefore, Edward H. Burke is hereby appointed a special administrator *pendente lite,* charged, however, with the sole duty of defending said alleged will to the

extent that he in his indepndent judgment shall deem
proper, and to secure for it admission to probate if
that is attainable on full and fair investigation, etc."

On the same day Mr. Burke qualified by taking the oath
of office, but no bond was required. In the record there ap-
pears a certificate of the Register of Wills, certifying that on
the 9th day of January, 1913, "Among other proceedings
were the following, viz: The appointment of Edward H.
Burke, special administrator *pendente lite,* carries with it the
duty of an attorney only, and for the purpose of protecting
special contingent interests in said estate, but not handling
any assets of said deceased, the duty of which falls to the care
of Hiram W. Friedenwald, Benjamin B. Friedenwald and
Jacob H. Friedenwald, administrators *pendente lite,* ap-
pointed by this Court January 9th, 1913."

A petition was filed in this Court by the appellee that the
record be diminished by striking out the above named mem-
orandum, alleging that it was not entered by the direction of
the Orphans' Court, but was an entry of the Register of Wills
made by the direction of the appellant's attorney. The an-
swer of the appellants to that petition alleges that, "before the
letters were actually issued, and as part of the transaction,
Mr. Gans dictated in the presence of Mr. Burke the memoran-
dum objected to, said memorandum to go on the records of
the Register of Wills and the Orphans' Court as part of the
transaction. All this was acquiesced in by Mr. Burke. This
memorandum was dictated out of abundant caution, so that
the transaction could not be possibly misunderstood, and re-
quired no action of the Orphans' Court."

At the instance of the appellee issues were sent to the Cir-
cuit Court for Baltimore County and a trial of them resulted
in the will of 1903 being set aside on the ground of undue
influence. A prior will dated August 3, 1875, was then ad-
mitted to probate and Hiram W. Friedenwald, Benjamin B.
Friedenwald and Jacob H. Friedenwald were appointed ad-
ministrators *cum testamento annexo.*

The appellee filed on July 10th, 1913, a petition, alleging among other things, "that he was active and conscientious in the discharge of his duties which were rendered the more wearing, arduous and responsible through a due appreciation of the enormous sum of money involved in the litigation as well as through the two-fold capacity in which your petitioner necessarily acted for the benefit of said estate, namely, as special administrator and attorney". He asked the Orphans' Court to pass an order authorizing and directing those administrators *c. t. a.* to pay to him "out of the fund of said estate, a reasonable sum, to be determined by your honors, as and for a compensation to your petitioner for his services rendered said estate as aforesaid." Accompanying the petition was a certificate of nine prominent members of the bar, some from Baltimore County and others from Baltimore City, certifying, "that we are familiar with the services rendered the above estate by the petitioner above named, and that $15,000 would be a proper and reasonable compensation to him for said services". The same day the Orphans' Court ordered the administrators *c. t. a.* to pay the appellee that sum as and for a compensation for the services rendered by him to said estate as special administrator *pendente lite"*. That order was passed without notice to the administrators, and on July 29th they filed a petition and exceptions, in which they excepted to the allowance and prayed that the order of July 10th be rescinded. They alleged that the sum of $15,000 was exorbitant and a grossly excessive and unreasonable compensation for such services.

An order was on the same day presented to the Court, providing that until the further order of the Court, after hearing had upon due notice to the appellee, special administrator *pendente lite,* and to the administrators *c. t. a.* "the operation and effect of the order passed in the above matter on the 10th day of July, 1913. * * * be and it is hereby suspended"; but the Court refused to sign it. An appeal was entered to the order of July 10th, 1913, and another from the action of the Court on July 29th.

Under the circumstances it was eminently proper that some one be appointed to defend the will of 1903, as it was manifest that there could be no real contest between the caveators and caveatees, as none of them were opposed to having that will set aside. It is not often that such a course is necessary, but there would seem to be no doubt that the Orphans' Court had the power to appoint some one. In *Emmert* v. *Stouffer,* 64 Md. 543, Chief Judge Alvey filed a concurring opinion and, although it was not the one adopted by the Court, the one of the majority does not deny the principle stated by Judge Alvey on page 558, where he said, "In such case, according to my opinion, there ought to have been appointed an administrator *pendente lite,* charged with the special duty of defending the integrity of the paper produced, and securing for it admission to probate, if that was attainable upon full and fair investigation. That there was an inherent power in the Orphans' Court, as a Court of probate, to make such an appointment, and for such a purpose, I think there can be no doubt. *Walker* v. *Woollaston,* 2 P. Wms. 576, 589; *Davis* v. *Chanter,* 2 Phill. 545, 550. Such a power would seem to exist from the necessities of the jurisdiction, and for the general purposes of justice; and such has been the opinion of Courts of the highest authority." He referred to *McArthur* v. *Scott,* 113 U. S. 340, where it was held that a decree annulling the probate of a will and declaring the will void was void as against grandchildren, because the estate and the rights of unborn grandchildren entitled in remainder were left unrepresented in the contest against the probate. The Supreme Court in speaking of the power of a probate Court to appoint an administrator *pendente lite* to defend a will or probate, said: "Nor can we doubt that the Court in the exercise of the appropriate branch of its jurisdiction, might in its discretion have granted administration limited to the single object of defending the will and the probate, against the bill in equity of the heirs. Courts vested with the jurisdiction of granting letters testamentary and of

adminintration have the inherent power of granting a limited administration, whenever it is necessary for the purposes of justice." See also 11 *Am. & Eng. Ency. of Law,* 798, 804; 18 *Cyc.* 108, 110.

Section 235 of Article 93 of the Code provides that "The Court shall have full power to take probate of wills, grant letters testamentary and of administration, direct the conduct and accounting of executors and administrators, superintend the distribution of estates of intestates, secure the rights of orphans and legatees and administer justice, in all matters relating to the affairs of deceased persons", and then, as amended, refers to estates of persons supposed to be dead. In referring to the section as quoted above, we said in *MacGill* v. *Hyalt,* 80 Md. 256: "The last clause of the section just quoted is very broad, and shows the legislative intention was to confer adequate power and jurisdiction upon Orphans' Courts in every case in which their general powers would enable them to act". It would be difficult to imagine a cause which would more imperatively demand such action of the Court in administering justice than this one did. Perhaps it would have been more accurate to have called Mr. Burke *administrator ad litem,* as we understand from the memorandum above referred to and the statements at the argument that on the same day he was appointed, three of the Friedenwald heirs were appointed administrators *pendente lite.* As such administrators usually have charge of the estate of the decedent until the suit is ended, one having that title would ordinarily be supposed to have such charge, but as the letters issued to Mr. Burke show that he was "charged with the sole duty of defending the said alleged will, to the extent that he, in his independent judgment should deem proper, and to secure for it admission to probate, if that is attainable on full and fair investigation", there can be no difficulty in ascertaining what his duties were, whether he be called "a special administrator *pendente lite*", or "administrator *ad litem*":

We are of the opinion then that the Orphans' Court had the power to appoint the appellee, and we can have no doubt that they have the power to grant him such reasonable compensation as the services rendered by him justify. The answer of the appellee to the caveat of the will of 1903 suggested the appointment of someone and the language of that answer was practically adopted in the letters—amongst other things that someone be appointed "at the cost of the estate." As Mr. Burke was an attorney, it was undoubtedly intended that he should act as an attorney in defending the will, as otherwise the Court would have provided for his employing some other attorney. The record is not very clear as to that, but we take it for granted that the answer filed by the appellee to the petition of the caveators and the other proceedings taken by him were all done in his name as special administrator, and hence he must have acted in both capacities. But as he did not have charge of the assets of the estate, and could not have been made responsible for them, or any of them, his great responsibility and his real services were those of an attorney, and in allowing him compensation for his services those facts cannot be ignored. We therefore do not consider it material whether or not the memorandum above referred to be treated as properly in the record, but with the answer of the administrators *c. t. a.* above mentioned not denied, we would not feel justified in striking it out or ignoring it. It cannot however have any important effect in fixing the compensation, for if there be any conflict between it and the letters issued to the appellee the latter would prevail, as they would be his guide, but in our judgment when the two papers are read together, they only mean what we have already indicated was the real intention—that he should act as attorney in his name as special administrator and was not to be responsible for the assets of the estate. The costs of the contest would be the greatest liability he would incur, outside of what he would be responsible for as attorney, and as he was engaged in the defense by the express directions of the Court, it would of

course protect him from costs, if he did his duty, as it is conceded he did.

The appellee should be allowed a proper and reasonable compensation for such services as he rendered as special administrator, keeping in mind the facts we have already alluded to, and for such as he rendered as attorney. One of the most delicate duties Courts are called upon to perform is that of fixing the amount of compensation of attorneys in cases in which they are entitled to be paid out of an estate or fund before the Court. It would be difficult to lay down a general rule, to be followed in all cases, where such compensation is to be allowed, beyond saying that it must be reasonable and fair. In this case, there is the certificate of nine attorneys referred to above, and the Court fixed the amount recommended by them. While a certificate signed by responsible and leading members of the bar is entitled to great weight, it is of course not conclusive, and when an *ex parte* order has been passed fixing the compensation of an attorney, and those interested in the estate promptly object to the allowance, on the ground that it is excessive and unreasonable, and ask that the order allowing it be rescinded, they are entitled to be heard.

The order of July 10 directs the administrators *c. t. a.* to pay the sum named "as and for a compensation for the services rendered by him to said estate as special administrator *pendente lite*," and not in terms "as special administrator and attorney," although the petition for compensation had referred to the two-fold capacity in which he had acted. Inasmuch as the services rendered by him were for the most part those of an attorney, it would have been better to have stated in the order that it was intended to include compensation for services in both capacities, but we assume that such was the intention of the Court in passing it, and it was not suggested that any other compensation was claimed or expected. If the order had been intended to include compensation as administrator *pendente lite* only, and to exclude that for services rendered as attorney, we could not have hesitated to reverse the

order, but on the assumption that such was not the intention, we do not feel called upon or at liberty to now determine what is a proper compensation for all services rendered by the appellee. There should be a hearing in the Orphans' Court where the appellants can, if they desire, examine the attorneys, certifying to the value of the services, so as to ascertain what their opinion is based upon, etc., and present to the Orphans' Court such facts and authorities as they may rely upon. Of course, the appellee is likewise entitled to present his side of the controversy.

The only difficulty which confronts us is how to dispose of the appeals before us, so as to conform to our practice, and at the same time not prejudice the rights of either side. In *Miller* v. *Gehr,* 91 Md. 715, it was said: "It being within the power and jurisdiction of the Orphans' Court to allow a fee for such services, its order was not void, notwithstanding it was passed without notice to the appellants." In that case an order was passed on March 26th, 1900, by the Orphans' Court, without notice, authorizing and directing the executors to pay a fee to the attorneys who represented them in a contest over the will, which resulted in a verdict for the caveators. The administrators, who were appointed after the will was set aside, and the next of kin, promptly filed a petition alleging that the fee was excessive, oppressive and unreasonable, praying that the order be rescinded and that their objections to said allowance be inquired into. The Court on April 2nd, 1900, passed an order setting down the petition for hearing, with leave to the parties "to offer proof at said hearing." The petitioners then filed another petition in which they asked for issues to be framed and transmitted to a Court of law. On April 6th, the Court passed an order dismissing both of those petitions. Appeals were taken from the original order of March 26th allowing the fee, and those of April 2nd and 6th, respectively. We said: "There being nothing on the face of the proceedings to show that the Court acted without authority in passing the order, and there being no evidence to show the amount named was unreasonable, the appeal from the

order of March 26th, 1900, will be dismissed, as the order of April 2nd gave the appellants full opportunity to be heard and must be considered in connection with the previous one." The order of April 2nd and that of April 6th, in so far as it dismissed the petition for issues, were affirmed, but the part of the order of April 6th which dismissed the petition to rescind the original order and asking for a hearing was reversed. We said: "They had not had a hearing before the order was passed, and when they so promptly came into Court and asked to be heard they could not properly be denied that right, simply because they also sought to have issues sent to a Court of law. The privilege should have been given them of proceeding under the first petition and then the Court could have determined whether there was any reason for rescinding the order already passed, and, if so, pass one in accordance with its conclusions reached after the hearing. If not satisfied with the decision of the Orphans' Court, the petitioners would then have been entitled to have its action reviewed by this Court, on the testimony to be incorporated in the record. We cannot now pass upon that question, because there is no evidence before us," etc.

We have already said we would not on this record pass on the amount of compensation to be allowed, but it should first be determined by the Orphans' Court after a hearing of the parties. We consequently expressly refrain from determining whether the sum named in the order is reasonable or unreasonable, and indicate no opinion on that subject beyond what we have said as to the character of duties of the appellee as special administrator, excluding those as attorney. As we are of the opinion that the Orphans' Court can allow such compensation as in its judgment is proper—provided, of course, it be not unreasonable and excessive—and we do not feel at liberty to determine whether the amount named is reasonable, we can not consistently confirm or reverse that order. Inasmuch as the Orphans' Court had not passed any order on the petition filed by the appellants and had simply declined to pass the one presented to it, the only other ques-

tion before us as to that is whether it committed reversible error in refusing to pass the order presented to it. The petition and exceptions of the appellants had the effect of suspending the order of July 10th until there could be a hearing on them, and after that hearing this Court could still review the action of the Orphans' Court as to the amount, as we said in *Miller* v. *Gehr*. In that case we affirmed the original order, but remanded the cause to be heard on the petition to rescind, and said, as quoted above, there could then be a review of the action of the Orphans' Court. It was not necessary, therefore, for the Orphans' Court to pass such an order as the one presented in order to preserve the right of appeal by the appellants. The Orphans' Court should have set the petition down for a hearing, after a reasonable notice to the appellee, but it has not declined to do that, but merely refused to pass the order suspending the original one.

As we will remand the case, an order setting the matter for hearing should be passed and the compensation be fixed. We will dismiss the appeal taken from the action of the Court on July 29th, 1913, and remand the cause, without affirming or reversing the order of July 10th, 1913. As the answer of the appellee was improperly inserted in the record and takes up a good deal of it, we will direct that each party pay one-half of the costs.

> *Appeal from the action of the Court of July 29, 1913, dismissed and cause remanded, without affirming or reversing the order of July 10, 1913, for further proceedings in accordance with this opinion— each side to pay one-half the costs.*