On December 19th, 1931, the Empire Fire Insurance Company, a foreign corporation, filed through its attorneys, Mullikin, Stockbridge Waters, a bill asking for the appointment of receivers for the Great National Insurance Company of Washington, District of Columbia; and on the same day Musgrave and Waters were appointed by the court "with the power and authority to take charge and possession of the goods, wares and merchandise, books, papers and effects belonging to the said Great National Insurance Company of Washington, D.C.," and to collect its outstanding debts. Two days thereafter, upon the petition of the receivers, Addison E. Mullikin, a member of the firm of Mullikin, Stockbridge Waters, and John H. Hessey, a member of the firm of Musgrave, Bowling Hessey, were appointed by the court counsel to the receivers.
On March 28th, 1932, the defendant, the Great National Insurance Company, filed a demurrer and answer to the bill of the Empire Fire Insurance Company of December 19th, 1931, upon which demurrer no action was ever taken.
On January 4th, 1933, the receivers filed their report showing the "total receipts" of the estate to be $5,465.13, whereupon an order was passed by the court allowing them as compensation for their services, subject to the usual exceptions, $2,000. On January 11th, Messrs. Mullikin and Hessey, upon petition filed by them, were allowed a fee of *Page 513 
$2,000 as counsel for the receivers. On February 4th, 1933, an auditor's report and account was filed by the receivers, in which were charged against the estate the following items: To the receivers as compensation, $2,000; to counsel a like amount; to Arthur T. Vanderbilt, attorney, "in payment of rent and release of office furniture, etc., at Newark, N.J., March 8th, 1932, 110 dollars"; and to "Lewis Weiner for moving office furniture, books, paper, etc., from Newark, N.J., to Baltimore, $135." The Great National Insurance Company filed exceptions to the allowance of the above-mentioned items on the 6th of March, but its exceptions were overruled or dismissed, and the audit finally ratified and confirmed. It is from that order that the appeal in No. 34 was taken.
On March 13th, 1933, the Berhenid Building Loan Association, appellant in No. 35, with James Dorsey and Fannie Lipman, filed a petition alleging that they had hitherto filed one praying that a co-receiver be appointed, but, as no action had been taken thereon, they were desirous of examining orally in open court witnesses in support of that petition, and asked that they be allowed to do so; and that they might also show why Joseph Oliver, receiver of the company in the District of Columbia, should not be appointed receiver in Maryland to succeed Musgrave and Waters, who were at that time contemplating resigning, and who later did resign.
Immediately following the petition or motion is the court's action thereon in these words:
"Upon the foregoing motion of James Dorsey et al., petitioners, it is this 13th day of March, 1933, Ordered by the Circuit Court of Baltimore City that the said petitioners be allowed to produce and examine orally in open Court their witnesses in support of their petition praying among other things for a co-receiver and in opposition to the appointment of Joseph Oliver as receiver herein.
"Denied, Mch. 13, 1933.
"H. Arthur Stump." *Page 514 
The counsel for the appellant, in appealing from the action of the court on the above petition or motion, directed the clerk to "enter an appeal (to the Court of Appeals of Maryland) on behalf of the Berhenid Building and Loan Association from the order passed on the 13th day of March, 1933, denying petition and order passed on the 13th day of March, 1933, appointing receiver."
It would seem that the prayer of the petition was granted by the order first passed, and subsequently, on the same day, denied by a rescission of that order.
The record in this case is in a rather confused state. Petitions and demurrers were filed upon which no action was taken; orders were passed upon petitions allowing amendments, which were made, and the order allowing such amendments thereafter rescinded. There is much in the record that should not have been inserted, as it serves to confuse rather than enlighten the court upon the issues presented.
We will first consider and pass upon the questions presented in No. 34 Appeals. The real questions go to the correctness of the court's action in allowing the items in the audit which were excepted to by the appellant. The question of the court's jurisdiction upon the application as made was raised by demurrer to the bill, upon which no action was ever taken. One of the reasons assigned for want of jurisdiction was that the insurance commissioner was not a party to the proceedings. He was not a party to the original bill, filed December 19th, 1931, and was not a party at the time of the appointment of receivers on that date. It is, however, disclosed by the record, by a statement of counsel in the nature of a stipulation, that at the time the bill of December 19th, 1931, was filed, Mr. Young, counsel for the Great National Insurance Company, appeared in court and consented to the appointment of the receivers, and at that time the assistant attorney general of the State likewise appeared with a bill on behalf of the insurance commissioner of the State against the defendant, the Great National Insurance Company. But at a conference then had by the parties named, it was agreed that the bill of the plaintiff should be *Page 515 
filed rather than the bill brought there by the assistant attorney general on behalf of the insurance commissioner.
Later, however, by orders of the 4th of January, 1933, an amendment was allowed to the bill by which Joseph Oliver, a resident of Baltimore City, and permanent receiver of the defendant company, was made a party plaintiff thereto, and William C. Walsh, insurance commissioner of Maryland, a party defendant. On March 6th, upon a motion of the defendant, the orders of January 4th were rescinded, whereupon, on the same day, a further order was passed upon the petition of the plaintiff, by which William C. Walsh was again made party defendant. He so remained until the 14th of March, when the order of March 6th was rescinded and the insurance commissioner was made party plaintiff instead of party defendant.
It will thus be seen that the insurance commissioner was, at the time of the order of March 6th, from which the appeal is taken, a defendant in these proceedings, and had been a defendant since the 4th day of that year.
In section 10 of article 48A of the Code, it is provided that "the commissioner is a necessary party to any proceedings instituted for the purpose of closing up the affairs of any company, when the same shall not be in the name of the State of Maryland." It was because of this statute that the insurance commissioner was made party to the bill. At this time the Acts of 1933, chapter 552, had not been passed, and there is no provision in the statute then in force requiring the insurance commissioner to appear as party plaintiff and not as party defendant in such proceedings.
The further objection was made that the plaintiff, being a non-resident of the state, was not a party entitled to the relief sought. This claim was made on the ground that the assets of the corporation in this state would first have to be applied to its creditors in Maryland, and that it was only in case of an excess of assets over the amount owing creditors in this state that any of such assets would go to the creditors of other states.
It was not known, nor did the record show, that there was *Page 516 
no excess of assets. Upon all the facts and circumstances of the case, we do not feel warranted in saying that the plaintiff had no such interest as would enable it to seek the relief sought; or that we are justified in holding that the court was without jurisdiction to appoint the receivers, and that the acts of the receivers were illegal because of a want of jurisdiction in the court, especially in view of the fact that the defendant company consented and agreed to their appointment at the time the appointment was made.
This brings us to the questions as to the correctness of the court's action in allowing, against the appellant's exceptions, the items of commissions to receivers, the fee allowed to counsel and the other two items of costs for rent, and for moving office furniture, etc.
It is contended that the commissions allowed the receivers are excessive, that is, more than should have been allowed them.
It is said in 23 R.C.L. 137, par. 147: "The compensation allowed a receiver must be reasonable, according to the circumstances of each case, and ordinarily should not be greater than would be his compensation for doing the same amount and character of work when employed by an individual. * * * The considerations which should control in fixing the compensation are the value of the property in controversy; the particular benefit derived from the receiver's efforts and attention; time, labor and skill required, and experience in the proper performance of the duties imposed; their fair value measured by common business standards; and the degree of integrity and dispatch with which the work of the receivership is conducted. * * * There is generally no fixed rule as to the mode of allowing compensation. It may be by a commission on the amount of the fund, a lump sum, or a salary. Usually when the fund is large, a lump sum is proper."
In this case the receivers were authorized to take charge and possession of the goods, wares and merchandise, books, papers and effects of and belonging to the appellant in the State of Maryland, and to collect the outstanding debts due *Page 517 
it. By their report, the total amount of money collected by them prior to the bank holidays in 1933, including $3,428.71 on deposit in the Baltimore Trust Company, and $298 on deposit in the First National Bank of Baltimore, together with other much smaller amounts, such as interest on mortgages, dividends on stock, etc., amounted to $5,465.13. In addition to this, the receivers reported that they had taken into their possession certain securities in the nature of mortgages, bonds and stocks, upon which they have collected nothing, and their value is altogether unknown to us.
Making the collections, which consisted mostly of bank deposits, would not ordinarily require much time or labor; nor would the services be either onerous or difficult. The commissions allowed, chiefly for such services, consumed nearly one-half of all the collections. Upon the information we have as to the amount and extent of services rendered, we cannot escape the conclusion that the compensation allowed is excessive; but upon the meager evidence disclosed by the record we are unable to say what amount the receivers should be paid for the services rendered by them.
What we have said in relation to the compensation allowed the receivers applies with equal force to the fee of $2,000 allowed counsel. Counsel to receivers should be allowed reasonable and proper compensation for the services rendered by them, keeping in mind the amount of services rendered as well as the skill required in rendering those services.
As was said by Chief Judge Boyd in Friedenwald v. Burke,122 Md. 164, 89 A. 424, 427: "One of the most delicate duties courts are called upon to perform is that of fixing the amount of compensation of attorneys in cases in which they are entitled to be paid out of an estate or fund before the court. It would be difficult to lay down a general rule, to be followed in all cases where such compensation is to be allowed, beyond saying that it must be reasonable and fair."
The trial court, generally speaking, is more or less familiar with the amount of work and services rendered by counsel and the skill required to render those services; yet there may *Page 518 
be times when it is necessary that the court, in order to reach a conclusion as to the value of the services rendered by counsel, be furnished in evidence with facts of which it has no personal knowledge. There is a practice prevailing in this state of having attorneys estimate the value of services of counsel and present this estimate to the court to aid it in reaching its conclusions. This was done in the present case. Two prominent and reputable attorneys of the Baltimore bar signed a statement to the effect that they were familiar with the services rendered by the counsel, and that they "recommended a fee of $2,000 as reasonable compensation for the services performed."
This practice was alluded to by Chief Judge Boyd inFriedenwald v. Burke, supra, where he said: "While a certificate signed by responsibile and leading members of the bar is entitled to great weight, it is, of course, not conclusive. * * *"
As we said in speaking of the allowance of commissions, we cannot say, upon the meager information we have, however liberal the allowance appears to us, that the amount of fee allowed was excessive.
The third item to which exceptions were filed was an allowance for the payment of rent and release of office fixtures in Newark, N.J., $110; and the fourth item was an allowance for moving office furniture from Newark, N.J., to Baltimore, $135. In the absence of any facts or circumstances, explaining or throwing any light on the situation in connection with such payments, we are unable to say that they were wrongfully paid or that they were excessive.
In view of our inability to pass on the value of the services rendered by the receivers and the counsel to receivers upon the facts contained in the record, it will be necessary to remand this case that the court below may take evidence and determine therefrom the value of the services rendered, as was done inFriedenwald v. Burke, supra, where Chief Judge Boyd said: "When an ex parte order has been passed fixing the compensation of an attorney, and those interested in the estate promptly object to the allowance, on the ground that it *Page 519 
is excessive and unreasonable, and ask that the order allowing it be rescinded, they are entitled to be heard."
In this case, the objection to the allowance of the items was seasonably made, and, so far as the record discloses, no evidence was taken and hearing had in respect thereto.
This case will be remanded without reversal or affirmance, in order that a hearing may be had and evidence taken to determine the value of the services of the receivers and counsel to receivers. As the case is to be remanded, evidence may also be taken, if desired, upon the other items involved in this appeal, not only to determine the legality of the charges, but also the correctness of the amount allowed therefor, if the charges be found otherwise legal and proper.
As we have said, the appeal in No. 35 is from the court's action of March 13th, 1933, denying the prayer of the appellant's petition filed on that date. The petition alleged that at an earlier date the petitioners had filed a petition asking for the appointment of a co-receiver, which was answered by the receivers saying there was no necessity for a co-receiver. But no action was taken thereon. The petition prayed for the passage of an order permitting them to examine orally in court witnesses in support of their earlier petition, and also to show why Joseph Oliver, whose name had been mentioned as successor to Musgrave and Waters, if they resigned as receivers, should not be appointed. The question therefore is: Did the court commit a reversible error in its refusal to grant the prayer of the petition to permit the appellant to produce evidence, first in connection with their prayer for the appointment of a co-receiver, and, second, to show why Oliver should not be appointed, if Musgrave and Waters resigned as receivers?
Article 16, § 86, of the Code, provides: "In all cases pending on motion * * * to appoint a receiver, or motion to rescind an order appointing a receiver, the court may, at the instance of either party, order testimony to be taken before such person, and upon such notice and in such manner as the court in its discretion may direct, to be used at the hearing of such motion." *Page 520 
We do not construe this statute, to which our attention has been called by the appellant, to mean that, where application is made for the appointment of a co-receiver, the court is required to order testimony taken to determine whether a co-receiver should be appointed. If the court is satisfied, upon the petition and answer, that a co-receiver is not necessary, it is not, under this statute or otherwise, required to take evidence as to the appointment of such co-receiver. And the court was certainly not required to order testimony to be taken upon the question whether or not Oliver should be appointed receiver. Musgrave and Waters were at the time serving as such receivers; they had not resigned, and it was not then known as a fact that they would resign; and yet the court was asked to take testimony tending to show why Oliver should not be appointed in the event of their resignations.
As we discover no error committed by the court in passing the order or decree appealed from, the decree will be affirmed.
In No. 34, cause remanded without affirming or reversing thedecree, for further proceedings in accordance with this opinion,the costs of the appeal to this court to be paid by theappellee.
In No. 35, decree affirmed, with costs. *Page 521