GEORGE W. BOULDEN, ADMINISTRATOR, ET. AL. *v.*
JAMES E. DEAN.

[No. 39, April Term, 1934]

102

*Decided June 11, 1934.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Joshua Clayton,* with whom was *G. Reynolds Ash* on the brief, for the appellants.

*E. Kirk Brown,* for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On June 2nd, 1899, Charles M. Boulden executed a last will and testament, in which, after leaving to his wife, Mary H. Boulden, also called Mary H. M. Boulden, his residuary estate for life with power to use the principal when necessary if the net value of the estate proved to be less than $15,000, he provided: "Upon the death of my said wife the principal remaining of my estate shall be equally divided among my brothers and sisters. If my brother or any of my sisters shall die before the death of my said wife leaving issue said issue shall take the share that would have been taken by the brother or sister so dying had he or she been living at the time of the death of my said wife."

The will was probated December 23rd, 1907, and there were living at that time Mary H. Boulden, the widow, John R. Boulden, a brother, and Margaret A. Boulden and

Laura V. Dean, sisters of the testator. Mary H. Boulden died March 12th, 1933, John R. Boulden survived the testator, but predeceased Mary H. Boulden, leaving, however, children to survive him and her. Margaret A. Boulden, a sister, died in 1920, leaving to survive her three children, two of whom survive, and a third, now deceased, who left children now living.

Laura Virginia Dean, the last surviving sister, died in September, 1925, leaving, to survive her, her husband, James E. Dean, and one son, Clarence B. Dean, who died in 1931, leaving to survive him his father and only heir at law, James E. Dean, the appellee in this case.

On June 29th, 1931, Mary H. Boulden, as executrix of the will of Charles M. Boulden, filed her first and final administration account, under which she distributed to herself as life tenant $12,219.47.

On May 20th, 1933, James E. Dean filed in the Circuit Court for Cecil County against George W. Boulden, administrator *c. t. a. d. b. n.* of Charles M. Boulden, Carrie B. McCullough, and W. Sterling Evans, executors of the estate of Mary H. Boulden, and against the living nephews and nieces of the testator, and the children of Mary A. McIntyre, a deceased niece, the bill of complaint in this case, in which he prayed the sale in lieu of partition of certain real estate of which the testator died seised, and also that George W. Boulden, administrator *d. b. n. c. t. a.* of Charles M. Boulden, be required to turn over to the remaindermen of the estate of Charles M. Boulden all moneys and property which may have come into his hands as such administrator, and that his letters be revoked, and that the executors of the estate of Mary H. Boulden segregate and turn over to such "remaindermen" all moneys and property held by Mary H. Boulden, as life tenant under the will of Charles M. Boulden.

To that bill all of the defendants except the executors of Mary H. Boulden demurred generally, and, that demurrer having been overruled, they took their appeal.

The ground of the demurrer appears to have been

that Charles H. Boulden, in that clause of his will which has been quoted, gave his residuary estate to a class to be composed of his brothers and sisters and the children of deceased brothers and sisters who were living at the death of Mary H. Boulden, and that, as Clarence B. Dean predeceased Mary H. Boulden without issue, he took nothing under the will, and that consequently James E. Dean, as the heir of Clarence B. Dean, took no interest in the estate of Charles M. Boulden, and has no interest in the subject matter of this suit. The contention of the appellee is that Laura V. Dean took a vested remainder under the will of Charles M. Boulden, subject to being divested "by her death leaving issue before the death of the life tenant," and that, as she died during the life of the life tenant, her share in the Boulden estate vested in her son and only heir at law, Clarence B. Dean, and that upon his death it "passed to the plaintiff as his only heir at law."

To say that the intention of a testator is the controlling guide in the construction of his will, and that, when ascertained, it will be given effect in so far as it is consistent with established law, is to state principles which long since have crystalized into fixed and unyielding rules. *Miller, Construction of Wills,* sec. 9, and cases there cited. Another principle as well recognized in theory, although not as uniformly applied, is that, where the language of the testator under consideration is so clear and plain as to leave no substantial doubt as to its meaning, considered in connection with all other language of the will, it will be accepted as conclusive and exclusive evidence of that intention, for the function of courts is to construe wills and not to write them, to ascertain an intent and not to create one. *Id.* sec. 10.

Turning to the second and third clauses of the will in issue, their language leaves no room for any reasonable doubt that the intention and will of the testator was, first, to protect his wife against want, even though that involved the consumption of his entire estate; and, second, to give so much of his estate as remained at his

wife's death to his brother and sisters if they were then living, or, if they died prior to his wife's death, to their issue *per stirpes*. He did not look beyond his brother and sisters and their issue, and the gift in remainder was complete and final in them.

To assume that by those provisions he meant to create a class composed of his brother and sisters living at the time of his wife's death and the issue of those who had died prior to that time, would not only do violence to the express language of the will, but would also be repugnant to settled principles of law which define the nature and incidents of such "classes."

A gift to a class is commonly understood as a gift of an aggregate sum to a body of persons uncertain in number at the time of the gift, to be ascertained at a future time, who are to take in definite proportions in accordance with a ratio dependent upon the number embraced in the class at the time of distribution. *Stahl v. Emery*, 147 Md. 126, 127 A. 760; *Jarman on Wills*, *p. 232; *Miller, Construction of Wills*, ch. 9. Its antithesis is a gift to an individual either by name or by some description sufficiently explicit to permit the donee to be identified as the particular individual for whom the gift was intended.

In this case the manifest intention of the testator was that the remainder of his estate, after his wife's death, should go in equal shares to his brother and sisters, each of whom would take an undivided share, which upon the death of such donee prior to distribution would go to his or her issue, and not to an aggregate fund to be distributed among a class composed of the brother and sisters of the testator and the issue of such of them as predeceased the life tenant leaving issue surviving.

Rejecting the theory of a gift to a class, the question is, What estate or interest did the brother and sisters of the testator take under the third clause of his will?

A well-established rule of testamentary construction is that, in the absence of some clear manifestation of a contrary intent, or some contravening principle of law, estates will be treated as vesting at the earliest possible

moment (*Miller, Constr. Wills,* sec. 227), and consistently with that policy conditions will be construed as subsequent rather than precedent, where such a construction is reasonable and is permitted by established legal principles, and where a contrary construction would defeat the early vesting of an estate. *Id.*

"Estates will be held to be vested wherever it can fairly be done without doing violence to the language of the will. To make them contingent there must be plain expression to that effect or such intent must be so plainly inferable from the terms used as to leave no room for construction. In doubtful cases the interest should be held to be vested rather than contingent, unless the instrument under consideration does not admit of such construction. The general principle is that any devise or bequest in favor of a person or persons *in esse,* whether such persons be individualized or treated as a class, confers an immediately vested interest upon the death of the testator, although the time of possession or enjoyment may be postponed, unless there be some clearly expressed desire or some manifest reason for suspending or deferring the time of vesting." *Miller, Construction of Wills,* p. 630.

Applying those principles to this case, considered independently or in connection with the whole will, every word of the clause under consideration leads to the conclusion that the testator intended that his brother and sisters should each take a vested remainder in his estate, subject to be divested only upon the condition subsequent that, if the brother or either or both of the sisters died before the life tenant leaving issue, the interest of the brother or sister so dying would be divested and vested in such issue who would take under the will in substitution for the brother or sister so dying.

In *Gray on Perpetuities,* sec. 108, it is said: "If the conditional element is incorporated into the description of, or into the gift to, the remaindermen, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the remainder is

vested. Thus in a devise to A for life, remainder to his children, but if any child dies in the lifetime of A his share to go to those who survive A, the share of each child is vested, subject to be divested. But in a devise to A for life, remainder to such of his children as survive him, the remainder is contingent."

The suggestion advanced by the appellants that such a construction would violate the presumed intention of the testator to leave his estate to "those of his blood," when examined, is found to have little force. For, while it may be true that, where an estate vests at the death of the testator, it may find its way into the hands of strangers, and, where it vests at some more remote period, it will remain longer in his blood, yet it rarely happens that he is as much interested in remote and unknown relatives as in the immediate objects of his bounty, and the supposition that he would prefer that those who were closest to him in life should have some actual, tangible, and immediate benefit of his gift, such as the right to sell or otherwise dispose of it, is at least as reasonable as the supposition that he preferred that they should have a mere hope or expectancy in order that distant and perhaps unknown relatives might ultimately possess it. And that is especially true where the property was not so identified with his family name or traditions that the testator might naturally as a matter of personal pride be interested in keeping it in the family as long as possible. *Miller, Const. of Wills*, sec. 227; *Mercer v. Safe Dep. & Trust Co.*, 91 Md. 116, 45 A. 865.

In the clause under consideration the testator in the first sentence thereof created what was unquestionably a vested remainder in his brother and sisters. Then he dealt with the possibility that those remaindermen might not survive his wife, and in a separate sentence he provided that in such an event the share of the one so dying should go to his or her issue. The obvious inference from that language is that he intended that his brothers and sisters should take a vested remainder in his residuary estate subject to being divested if the donee died dur-

ing the life of the life tenant leaving issue, in which event the share of the one so dying would then vest in his or her issue. That construction gratifies the apparent intent of the testator, and the rule favoring the early vesting of estates, and is also consistent with the decisions of this court in other and analogous cases.

In *Cox v. Handy,* 78 Md. 121, 27 A. 227, 501, it was said: "In a book of great authority, a very simple and satisfactory test is given by which a vested estate may be known. It is thus stated: 'Now, when a remainder is limited to a person *in esse* and ascertained, to take effect, by words of express limitation, on the determination of the preceding particular estate, this remainder is most clearly and unquestionably vested. The person to whom the remainder is limited may, in respect of the limitation of his estate, assert a right to the possession as soon as the possession shall fall.' *1 Preston on Estates,* 70." In that case the will, after giving to the widow of the testator a life estate in certain property, and providing for the sale of such property at her death, further provided that it "shall be divided amongst my children, share and share alike, the child or children of any deceased child to take the portion to which the parent, if living, would have been entitled." In construing that provision on a motion for reargument it was said: "Julia Handy's father died before the testator [made his will], and he, therefore, had no interest in the property. But, nevertheless, the testator's intention was clear that she should take a child's part. The child of any deceased child was, by the terms of the will, to take the portion to which the parent would have been entitled if living at the time when the division was appointed to take place. It made no difference whether the death occurred in the lifetime of the testator, or after his decease; the mere fact that the parent was dead at the time of the expiration of the widow's life estate was sufficient to complete his child's title."

In *Wilson v. Pichon,* 162 Md. 200, 159 A. 766, a testamentary clause under consideration provided that at the

expiration of a particular estate certain property should go "to my sons James G. Wilson and William. B. Wilson equally and absolutely, and to the descendants of either or both of them, if either or both shall die before her, such descendants to take *per stirpes* and not *per capita,* the shares to which its or their parent or parents would, if living, be entitled to." That language was held by this court, in an opinion by Judge Sloan in which the cases were elaborately and exhaustively reviewed, to create a vested remainder in the two sons, possession being delayed until the death of the life tenant.

In *Lee v. Waltjen,* 141 Md. 450, 119 A. 246, a testator, after giving a life estate in property to certain persons, provided that "at the death of any one of said life tenants, the share of the one so dying is to go to his or her legitimate children and in the event of such life tenant dying without leaving such child or children, then such share is to go to the child or children of the other life tenants *per stirpes* and not *per capita.*" That language was held, in an opinion filed for the court by Judge Urner, to create "a vested estate in remainder which the will devised to the children of the life tenant, defeasible in the event, which did not occur, of his death without leaving any children. The condition of defeasance having failed, the estate of the children in remainder was not divested but became indefeasible, and the interest of the son, upon his death intestate, passed to his child and widow."

In *Cole v. Safe Dep. & Tr. Co.,* 143 Md. 90, 121 A. 911, the following language: "And from and immediately after the death of each of said children of the said Robert W. L. Rasin as such deaths shall respectively occur then in trust to transfer and assign absolutely the share or portion of the principal or corpus of the trust estate out of which (each) of said children so dying received his or her share of said income over to the child or children of the child of said Robert W. L. Rasin so dying, the descendants of any deceased grandchild of said Robert W. L. Rasin to take *per stirpes* the share which the par-

ent would have taken if living and thereupon the trust as to such share shall cease and determine and in case any of the said children of the said Robert W. L. Rasin should die without leaving issue living at the time of his or her death the net income from such share shall be paid to his or her surviving brother or sisters during their respective lives," was held to create vested remainders in the grandchildren.

In *Engel v. State, etc.*, 65 Md. 539, 5 A. 249, 250, where the provision was that the testator's property, at the termination of a life estate, should be divided "equally among all his children before named, 'or their share to the children of them that may have died, to them, their heirs or assigns,'" it was held to be "unmistakably clear that the testator intended to substitute the child or children of the legatee who might die in the place of the parent; and we are of opinion that the words in question do not confine the happening of the death of the legatee to the life-time of the testator; and, as the daughter survived her father, but died in the life-time of the widow, and, as to nearly all of the estate, before distribution made, her child became substituted legatee under the will."

Other cases supporting the construction announced are collected in *Wilson v. Pichon*, supra, and *Lee v. Waltjen*, supra, and need not for that reason be again cited here. See, also, *Tiffany on Real Property*, secs. 137, 138, for a very clear analysis of the principles affecting the distinction between vested and contingent remainders, and *Miller. Const. of Wills*, sec. 231.

Such cases as *Larmour v. Rich*, 71 Md. 384, 18 A. 702, where the decision turned upon what the court found to be the expressed intention of the testator, are obviously not in point, nor are such cases as *Billingsley v. Bradley* 166 Md. 412, 171 A. 351, where the conditional element was incorporated in the very description of the gift, and where the case depended mainly upon the meaning which the testator intended to give to the word "children."

For the reasons stated, we concur in the conclusion of

the trial court that Laura Virginia Dean took a vested remainder in an undivided one-third part of the residuary estate of Charles M. Boulden unconsumed at the death of the life tenant, and that, upon her death during the life tenancy, her interest under the will of Charles M. Boulden vested in her son, Clarence B. Dean, and upon his death passed to his heir at law, the appellee in this case.

The only remaining question in the case is whether, upon the facts stated, the appellee was entitled to the relief asked in the first and second prayers of his bill, which are as follows:

"1. That George W. Boulden, Administrator *d. b. n. c. t. a.* be required to account for and turn over to the remaindermen of the estate of Charles W. Boulden, deceased, all moneys and other property which may have come into his hands as Administrator aforesaid, and his letters of administration be revoked.

"2. That Carrie B. McCullough and W. Sterling Evans, Executors of Mary H. M. Boulden, deceased, separate her individual estate from the estate held by her as life tenant under the will of said Charles M. Boulden, and that they be required to account for and turn over to the remaindermen under said will, all moneys and other property held by the said Mary H. M. Boulden as life tenant."

Assuming that the lower court had the power to revoke letters of administration issued by the orphans' court, which we do not decide, there are no allegations in the bill to justify the relief asked in the first prayer. While it does not appear that the administrator *d. b. n. c. t. a.* of Charles M. Boulden has in his hands any funds of that estate, and manifestly he is entitled to receive from the administrator of Mary H. Boulden nothing which she held as life tenant under the will of Charles M. Boulden, yet, in the absence of allegations or proof to that effect, it cannot be assumed that he may not collect assets of the estate of Charles M. Boulden not accounted for by Mary H. Boulden, or which never came into her pos-

session.  Nor are there any allegations justifying the relief asked in the second prayer.  It cannot be assumed from the mere allegation that executors have been appointed for the estate of Mary H. Boulden, that they will not faithfully perform the duties incident to that office. There is no allegation that they have completed their administration, or that they have refused upon demand to turn over to the remaindermen any funds or property due them under the will of Charles M. Boulden which Mrs. Boulden held during her life.  But, since the demurrer was to the whole bill, and since its averments were sufficient to entitle the complainant to the primary relief sought, the demurrer to it was properly overruled, and the order appealed from will be affirmed.

*Order affirmed, with costs.*