IRENE M. HAMMOND *v.* SADIE V. PIPER ET AL.

[No. 29, October Term, 1945.]

*Decided November 29, 1945.*

The cause was argued before DELAPLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Omer K. Taylor,* with whom was *William A. Gunter* on the brief, for appellant.

*Leo H. Miller,* with whom was *Ellsworth R. Roulette* on the brief, for appellees.

HENDERSON, J., delivered the opinion of the Court.

Samuel D. Piper of Washington County died in April, 1908, leaving a will executed on May 31, 1906. He was survived by his widow, Mary E. Piper, and four children, Elmer E. Piper, Annie K. Hammond, Willie O. Piper and Raleigh S. Piper. By paragraph 1 of the will

he devised all his real and personal estate to his widow for life. By paragraph 2 he appointed his son Elmer and his daughter Annie executors without bond. By paragraph 3 he devised his home farm to his son Elmer, on condition that Elmer pay Annie $6,000. By the 5th paragraph he devised the "Reel" farm to his son Willie, with the provision that if Willie left no children or descendants surviving him, then at his death the said farm be sold and the proceeds divided "amongst my other children share and share alike." By paragraph 6, he bequeathed all his personal property to be divided equally among his children, share and share alike.

The 4th paragraph of the will read as follows: "I will to my executors my two double brick houses in Hagerstown * * * in trust for my son, Raleigh S. Piper, for his support and maintenance, my executors to keep up repairs, pay insurance, taxes, water rents and the remainder to be paid to Raleigh S. Piper monthly. And if he should die or at his death the said property to go to his children of the said Raleigh S. Piper and if he leaves no child or children or descendants of children surviving him then the said property to be sold and equally divided amongst my other children share and share alike."

The widow died in 1912; Annie died in 1918, Willie in 1920, and Elmer in 1933. Raleigh died April 23, 1944. Annie died intestate and left surviving her Samuel J. Hammond, her husband, and Samuel A. Hammond, her only child. Her husband died a few years later, leaving a will in favor of his son. The son died July 21, 1943, leaving a will devising his estate to the appellant Irene M. Hammond.

Willie O. Piper left a will by which he devised and bequeathed his entire estate to his widow Ida for life, with remainder to his daughter Mary. Both are still alive.

Elmer left a will in favor of his widow Sadie. He also left surviving him a son S. Webster Piper. Both are still living.

Raleigh S. Piper never married and died intestate leaving no child or children or descendants of children surviving him.

Upon the death of Mary E. Piper, widow of the testator Samuel D. Piper, the trust created by the 4th paragraph of his will was administered for Raleigh, first by the executors and later under the direction of the equity court. After the death of Raleigh, the real estate was sold and an account stated by the court auditor. He distributed the balance, one-third to Sadie V. Piper, devisee of Elmer E. Piper; one-third to Mary Piper, devisee of Willie O. Piper and assignee of her mother; and one-third to Irene Hammond, devisee of Samuel A. Hammond, devisee of Jacob S. Hammond and heir at law of Annie K. Hammond and Jacob S. Hammond. To this account exceptions were filed by Sadie V. Piper, the widow, and S. Webster Piper, the son, of Elmer E. Piper, and by Ida M. Piper, widow, and Mary C. Piper, daughter of Willie O. Piper. The chancellor sustained the exceptions, and directed that the proceeds be divided equally between S. Webster Piper, son of Elmer E. Piper, deceased, and Mary C. Piper, daughter of Willie O. Piper, deceased, upon the theory that there was an intestacy as to the proceeds and the corpus of the trust fund was distributable to the grandchildren of the testator, living at the time of the death of the life tenant, as his only heirs at law. From that order and decree, Irene Hammond takes this appeal.

The opinion of the learned chancellor seems to have assumed that if there were an intestacy, the property would pass to the heirs at law or distributees of the testator, living at the time of the death of the life beneficiary, rather than to the testator's heirs at law or distributees, living at the time of his death. This would not follow. Compare *Perkins v. Iglehart*, 183 Md. 520, 39 A. 2d 672. It is not necessary to discuss this point, however, as we think that there was no intestacy.

We think the chancellor was right in holding that the remainders to the "other children" were contingent and

not vested. The Maryland cases make this abundantly clear.

In *Buck v. Lantz*, 49 Md. 439, there was a deed of trust, which conveyed real and personal property to a trustee, in trust for the use of the grantor during her life and after her death for the use of her daughter Margaret during her life and after her death then in trust as to the remainder for such child or children of the daughter as she might leave, but if the daughter died without leaving descendants surviving her, then in trust to convey the remainder to Mary Harwood, a sister of the grantor. The sister survived the grantor, but died before the daughter, who afterwards died unmarried and without issue. It was held that the limitation over of the remainder to the sister of the grantor, after the death of the daughter, without leaving descendants surviving her, was a contingent remainder, which passed upon the death of the sister to her heirs, in whom it became vested upon the happening of the contingency. See also *Demill v. Reid*, 71 Md. 175, 17 A. 1014; *Garrison v. Hill*, 79 Md. 75, 28 A. 1062, 47 Am. St. Rep. 363; *Lee v. O'Donnell*, 95 Md. 538, 52 A. 979; *Fisher v. Wagner*, 109 Md. 243, 71 A. 999; *McClurg v. Meyers*, 129 Md. 112, 98 A. 491; and *Safe Deposit & Trust Co. v. Bouse*, 181 Md. 351, 29 A. 2d 906.

But the contingency was as to the event, and not as to takers. We think the remainders over to the "other children" were not gifts to a class, but were gifts to persons designated by description.

It is evident from a careful reading of the will that it was of the testator's own authorship and in his own handwriting. The names of all four of his children appear at one place or another in the will; they were all in existence and of age, at the time when the will was executed and at the time of the testator's death two years later. The words "other children" seem to refer to the three children other than Raleigh, who were the particular and sole objects of his bounty, after suitable provision for his widow and his son Raleigh, who was said

to have been mentally defective. We find nothing in the will to indicate that the testator intended that there should be an implied condition precedent of survivorship as between the other children; on the contrary, the direction to equally divide share and share alike negatives the idea of survivorship. Compare *Boulden v. Dean,* 167 Md. 101, 106, 173 A. 26. As the result of a finding that a class gift was intended would be intestacy, every presumption is against it. *Miller, Construction of Wills,* Section 157.

Where the remaindermen are ascertained, although there is contingency as to an event, such as the death of Raleigh without leaving children or descendants, such remainders are both descendable and devisable. 4 *Kent's Com.* 261; *Fearne, Cont. Rem.* 371. It is perfectly clear that the interest of Willie O. Piper passed under his will to his widow, Ida, for life, with remainder to his daughter Mary, and the interest of Elmer E. Piper passed under his will to his widow, Sadie V. Piper. *Fisher v. Wagner, supra.* But since Annie K. Hammond died intestate, it becomes necessary to determine whether her interest passed to her heirs or distributees living at the time of her death, or to her heirs and distributees *in esse* at the time of the falling-in of the life estate. Under the rule laid down in the *Restatement, Property,* Section 164, her interest would pass to her heirs living at the time of her death, but on this point the Maryland authorities are to the contrary. See *Miller, Construction of Wills,* Section 235.

In *Barnitz' Lessee v. Casey,* 7 Cranch 456, 469, 11 U. S. 456, 469, 3 L. Ed. 403, Justice Story said: "It seems very clear that at common law, contingent remainders and executory devises are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens." It was held, however, that only those heirs could take who were *in esse* when the contingency happened and the estate fell into possession. The Court said: "This rule is adopted in analogy to that rule of descent which requires that a person who claims a fee

simple by descent from one who was first purchaser of a reversion or remainder expectant on a freehold estate, must make himself heir or such purchaser at the time when that reversion or remainder falls into possession."

The rule announced by Mr. Justice Story has been consistently followed in Maryland, and even extended to personal property. *Jenkins v. Bonsal,* 116 Md. 629, 82 A. 229. In the leading case of *Buck v. Lantz, supra,* the intermediate heir (who was the life tenant) was excluded upon the authority of the Barnitz case. In *Garrison v. Hill, supra* (as explained in *Fisher v. Wagner, supra*), the life tenant was held excluded as an heir of the remainderman, who predeceased the life tenant, intestate. See also *Lee v. O'Donnell, supra.*

The ancient doctrine that seizin determines the stock of descent, as applied in the case in *Conner v. Waring,* 52 Md. 724, was discussed by this Court in the recent case of *Perkins v. Iglehart, supra* [183 Md. 520, 39 A. 2d 683]. It was there held that the doctrine was abolished by statutory enactment (Chap. 325, Acts of 1916), by which descent of real property now follows the course of distribution of personal property. The Court, speaking through Chief Judge Marbury, said: "There is no common law of seizin making the stock. The descent is by the Maryland law of inheritance and distribution."

The rule announced by Mr. Justice Story in the Barnitz case is not identical with the rule of *Conner v. Waring,* but was adopted by analogy. Nevertheless, when the latter was abolished by statute, the analogy must fail, and neither rule could propertly be applied to exclude intermediate heirs claiming under wills taking effect since the adoption of this statute.

The difficulty in the case at bar is that the will took effect before the passage of that Act. It was not retroactive, *Kernan v. Carter,* 132 Md. 577, 586, 104 A. 530. We are not prepared, in the case of the will before us, to overrule the line of Maryland cases establishing the rule, however anomolous it may be. Applying the rule, it would appear that the appellant is not entitled to a

share in the fund, since she was not an heir of Annie K. Hammond at the time of Raleigh's death.

The chancellor directed the fund to be divided between S. Webster Piper, son of Elmer E. Piper, deceased, and Mary C. Piper, daughter of Willie O. Piper. Although, as we have indicated, we think the shares passed under the wills of Elmer and Willie, respectively, it appears that there was an assignment from the life tenant under the will of Willie O. Piper to his daughter Mary, and Sadie V. Piper, devisee of Elmer, took no cross appeal from the award by the chancellor to her son. *Syfer v. Fidelity Trust Co.*, 184 Md. 391, 41 A. 2d 293, 296.

Under these circumstances we shall affirm the decree of the chancellor.

*Decree affirmed, with costs.*