EVANS ET AL. *v*. SAFE DEPOSIT & TRUST CO. OF
BALTIMORE

[No. 125, October Term, 1947.]

334

*Decided April 21, 1948.*

The cause was argued before MARBURY, C. J., DELA-
PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*J. Kemp Bartlett, Jr.,* and *Thomas Raeburn White,*
with whom were *Richard W. Kiefer, Edgar Allan Poe* and
*James E. Riely* on the brief, for the appellants.

*J. Nicholas Shriver, Jr.,* with whom was *Eben J. D.
Cross* on the brief, for Safe Deposit & Trust Company
of Baltimore.

*Robert W. Williams,* with whom was *Samuel B. Scrib-
ner* on the brief, for Charles B. Hoffman.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree for distribution of the
trust estate created by a deed of trust from Samuel Scrib-
ner and wife. The decree also covers distribution of a
trust estate created by Mr. Scribner's will, but as to that
trust estate the appeal has been abandoned.

On November 25, 1859 Mr. Scribner, then 69 years old,
executed the deed of trust, four days later on November
29, 1859 his will, and on April 9, 1866 a codicil. He died
May 30, 1873, his wife in May, 1880. He had four chil-
dren, (1) Julia Briggs, who married and in 1850 died
without issue, (2) Gertrude A. Rogers, who died August
6, 1856, leaving one child, Julia R. G. Rogers, presumably
a new-born or very young child, (3) Henrietta E. Scrib-
ner, who died unmarried April 21, 1906, leaving the
residue of her estate to Julia R. G. Rogers and (4) Mary
E. Mead, who had married before the date of Mr. Scrib-
ner's codicil and died in December 1899, leaving four
children, (a) Herman and (b) Clarence, both of whom
died without issue before 1906, (c) Frederick and (d)
Mary Gertrude (Abbey). Mrs. Mead left an annuity for

Herman and the residue of her estate to Frederick and Mary in equal shares. Frederick Mead died November 6, 1918, without issue, leaving the residue of his estate to Yale University. Mary Gertrude Abbey died June 20, 1931, without issue, leaving the residue of her estate in trust for charitable and educational purposes. Julia R. G. Rogers died unmarried December 22, 1944, leaving the residue of her estate to Goucher College.

Appellants are three sisters, great-grandchildren of a first cousin of Mr. Scribner, and are his heirs and next of kin at December 22, 1944, the date of Miss Rogers's death.

By the deed dated November 25, 1859 Mr. Scribner and wife granted unto "Henrietta E. Scribner, in fee", a described piece of ground in Baltimore, *habendum* unto Henrietta, "her heirs and assigns for ever", in trust for Julia R. G. Rogers for life, and from and after her death, "in trust for her child or children, if more than one child, to be equally divided between them", but in case she should die "without issue living, or descendant or descendants of the same,—then in Trust for the children of the said Samuel Scribner, to be equally divided between them, the child or children of any deceased child of the said Samuel Scribner, to take and have the part or share to which the parent, if living, would have been entitled", with full power to Henrietta to sell the trust estate or any part for reinvestment or to lease. By his will, dated November 29, 1859, Mr. Scribner gave his wife all his estate for life, and from and immediately after her death gave it to her "heirs at law * * *, their heirs, Executors, Administrators, and Assigns forever." By his codicil, dated April 9, 1866, he revoked the devise and bequest to her heirs at law, and "in lieu thereof" from and after her death he gave to his daughter Mary E. Mead one-third of his estate, to his daughter Henrietta E. Scribner one-third, and to his daughter Henrietta E. Scribner one-third in trust for his granddaughter Julia R. G. Rogers for life, with full power to Henrietta to sell the trust estate or any part and reinvest the proceeds or to

lease, and from and after the death of Julia R. G. Rogers, "then in trust for her child or children or descendant or descendants of the same, if any, she should have", but in case she should die "without leaving a child or children or descendant or descendants of the same living at the time of her death, then and in that case said trust estate and property to descend to and become the property absolutely of the said Mary E. Mead and Henrietta E. Scribner in equal portions when this trust shall cease."

On June 24, 1904 Safe Deposit and Trust Company was by orders of court designated substituted trustee under the deed and under the will. All or part of the original trust property has been sold and the proceeds reinvested in personal securities, but one or both of the trusts include ground rents and other real estate. The value of the trust estate under the deed is now $18,609, of that under the will $25,826. As trustee under the deed and under the will and as executor of Miss Roger's will, Safe Deposit and Trust Company filed a petition for construction of Mr. Scribner's deed and will and for directions as to distribution thereunder. The lower court decreed distribution of both trust estates, one-half to Miss Rogers's executor, one-fourth to Mrs. Abbey's administrator *c. t. a.* and one-fourth to Frederick Mead's administrator *c. t. a.*

Appellants claim the entire trust estate under the deed, abandoning a like claim to the trust estate under the will. They contend that: (1) The deed gave, after Miss Rogers's equitable life estate, alternate contingent remainders to two or more "classes", (*a*) "her child or children", or perhaps (by implication) "descendants of the same", (*b*) "the children of Samuel Scribner", (*c*) "the child or children of any deceased child of Samuel Scribner" to take the "share to which the parent, if living, would have been entitled". (2) The deed vested the legal fee in the trustee, determinable in the event that at the death of Miss Rogers no member of any of the specified classes was living, and left in Mr. Scribner a possibility of reverter in that event. (3) This possibility of

reverter was not devisable by Mr. Scribner or his successive heirs or devisees, but at the death of Miss Rogers the fee vested in appellants as the heirs of Mr. Scribner at the happening of the contingency. Appellants must maintain all three contentions, (1) that the contingent remainder to Mr. Scribner's "children" was a gift to a "class", contingent both as to the persons and the event, and not to Mrs. Mead and Henrietta, by designation as his "children", contingent only as to the event, (2) that the undisposed of interest was a mere possibility of reverter, and not a reversion, and (3) that this possibility of reverter was not devisable by or descendable from Mr. Scribner or any of his "intermediate" heirs or devisees before Miss Rogers's death.

1. Is the limitation to Mr. Scribner's "children" (a) a gift to a "class" or (b) a gift to designated individuals, i. e., Mary E. Mead and Henrietta E. Scribner, who at the date of the deed were his living children? In other words, was the gift to his children conditioned upon survival at Miss Rogers's death?

A gift to a class has been defined as a gift of an aggregate sum (1) to a body of persons uncertain in number at the time of the gift, (2) to be ascertained at a future time, and (3) who are all to take in equal or some other definite proportions; the share of each being dependent for its amount upon the ultimate number of persons, *Jarman, Wills,* 6th Ed., 232; *Miller, Construction of Wills,* §§ 67, 237; *Dulany v. Middleton,* 72 Md. 67, 77, 19 A. 146; *Chism v. Reese,* 190 Md. 311, 58 A. 2d 643, this day decided. *Cf., Restatement, Property,* § 279.

Where the person to take is certain, a contingent remainder is transmissible; but this rule does not apply where there is a limitation to children as a "class" and there are those of the "class" (or none) in being at the time the contingency happens and the estate becomes vested. It has been said that "where there is an ultimate limitation upon a contingency to a class of persons plainly described, and there are persons *in esse* answering the description when the contengency happens, they

alone can take". *Demill v. Reid,* 71 Md. 175, 191, 17 A. 1014, 1016; *Miller, supra,* § 237. Mr. Miller remarks (page 676, note 4) that the result of this rule sometimes is that children of deceased "children" are excluded from their parent's share; "an unfortunate result, based upon a very technical rule". He also says (§ 67, page 186, note), "There are many conflicting decisions on points arising in the subject of gifts to a class. The English courts seem at times inclined to regard their decisions as having established fixed rules, largely based upon the principle of survivorship in joint tenancy; but the American cases, with some exceptions, are generally based more firmly upon the intention, the principles of joint tenancy not being favored in this country." *Cf. Restatement, Property,* Chapter 22, Introductory Note, pp. 1445-1451. One author doubts whether a majority of courts support the rule, in *Demill v. Reid,* that an alternative contingent remainder to a class is conditioned upon survival, though a single remainder expressed in the same words would not be so conditioned. *Simes, Future Interests,* § 391; *cf., Bouldin v. Dean,* 167 Md. 101, 106, 173 A. 26. Another author says that probably a majority of the courts still support the rule, but suggests that this court re-examine *Demill v. Reid. Reno, Alienability and Transmissibility of Future Interests in Maryland,* 2 *Maryland Law Review* 89, 118, 119. The *Restatement, Property,* seems to regard survival as a question of construction, in each case, with respect to class gifts and other gifts, not necessarily an implied condition of class gifts, vested or contingent. If it does not directly deny the rule as to alternative remainders in *Demill v. Reid* (see § 261), it seems to do so by implication (§§ 249-254; 296(2), comment j), but to affirm the converse as a guide to construction of single remainders. §255. For the particular purposes of (*a*) alienation, subject to survival (*Hans v. Safe Deposit & Trust Company,* 178 Md. 52, 62, 12 A. 2d 208, 213), and (*b*) construction and application of a tax statute (*Safe Deposit & Trust Company v. Bouse,* 181 Md. 351, 29 A. 2d 906), we have held that a

"future executory estate or interest" or a remainder to grandchildren living at the death of a life tenant is "vested" in interest, subject to be divested, during the life tenancy. These cases are not to be regarded as overruling *Demill v. Reid* and the rules of construction of class gifts, which have been too long and too often approved by this court to be now overruled.

However, the Jarman definition of a class gift and the effect of such a gift in *Demill v. Reid* are both predicated on the intention of the testator to make a gift to "a body of persons uncertain in number at the time of the gift, to be ascertained at a future date." Without such an intention, there is no class and the lore of class gifts, including *Demill v. Reid*, is irrevelant. *Cf. Restatement, Property,* § 279, comment b. The "antithesis" of a class gift "is a gift to an individual either by name or by some description sufficiently explicit to permit the donee to be identified as the particular individual for whom the gift was intended". *Boulden v. Dean,* 167 Md. 101, 106, 173 A. 26, 28. The last case in which *Demill v. Reid* was cited by this court involved "such gifts to persons designated by description", *viz.*, contingent remainders to "my other children", who elsewhere in the will were mentioned by name. *Hammond v. Piper,* 185 Md. 314, 318, 44 A. 2d 756, 757. Though *Demill v. Reid* has frequently been cited by this court, the result in that case has seldom been reached in subsequent cases. In *Stahl v. Emery,* 147 Md. 123, 127 A. 760, a similar result was reached with respect to children who predeceased the testator. In 1929 this result was prevented under future wills by amendment of the lapsed legacy statute. Code, Art. 93, secs. 340, 341. In *Robinson v. Mercantile Trust Company,* 180 Md. 336, 343, 344, 24 A. 2d 299, 138 A. L. R. 1427, what was said in *Stahl v. Emery* as to remainders to a class after a life estate was held to be obiter. In the later cases, and some earlier, when gifts were not expressly conditioned upon survival, *e. g.,* by the words "then living" or other unequivocal words, they were, by the rule of early vesting or by analogous reasoning, held

not to be class gifts, or by early determination of class membership they became vested and ceased to be class gifts. Throughout "the apparently conflicting, and often confusing, mass of decisions on the subject" of class gifts, "certain canons * * *, while subordinate to the general rule that the obvious intent of the testator must prevail, have been generally recognized as having a certain persuasive force. One is that a gift to a group of persons *in esse nominatim* is a gift to the individuals and not to a class (*Underhill on Wills*, § 552) ; another is that a gift to persons *in esse* and definitely fixed and identified by the words of the gift at the time is to the individuals and not to a class (*Miller on Wills*, § 68). Again, it is generally held that, in the absence of a clear indication of a contrary intent, the time at which the membership of a class is fixed and determined, and at which the respective interests of its members become vested, and assume the character of a tenancy in common, is at the death of the testator. 13 *A. L. R.* 616; *Alexander on Wills*, § 880." *Newlin v. Mercantile Trust Company*, 161 Md. 622, 637, 158 A. 51, 57.

In the case at bar lapse of time no doubt has hidden facts and circumstances which might possibly have thrown light on persons and things designated by the words of the deed. We do not know the age of Mr. Scribner's wife, the condition in 1859 of his or her health or estate, or the financial condition of his daughters or his motherless grandddaughter, or whether Mrs. Mead had yet married or Mr. Rogers had died or remarried, or whether Mr. Scribner had been married more than once. The lower court said, "While there might have been a legal possibility that Samuel Scribner might have had other children before he died, it seems clear to me the problem [of determining whether the remainder of his 'children' was a gift to a class] has arisen because of the choice of language by the draftsman of the instrument, and not any difference in the wishes of the grantor from those expressed in his will". We may indeed surmise that he had no actual thought

of future children, but we cannot construe the deed by what he said in his codicil six years later. The deed and the will might perhaps be regarded as contemporaneous, but they are materially different and present different questions of law and construction. Construction of the one from the other would be *ignotum per ignotius*. The deed, though not a model of clarity or a standardized form, is not, like the will in *Chism v. Reese, supra*, a unique jumble of words falling into no set classification but containing their own guides to their own meaning. The deed does contain class words, not identified by names as in *Hammond v. Piper, supra*, but susceptible of construction as a class gift. We are not prepared to say, on the facts before us, that the deed does not make a gift to a class, as in *Demill v. Reid*. Our conclusions on the other questions presented make it unnecessary to hold the contrary. It is sufficient to assume, without deciding, that the deed did make a class gift to "children", conditioned upon survival. The alternative or substitutional gift to "the child or children of any deceased child" seems clearly a class gift, so conditioned.

Assumption that the deed made class gifts makes it unnecessary to consider the question (not raised by any of the parties) whether the remainders to Mr. Scribner's children were conditioned upon an indefinite failure of issue of Miss Rogers and were therefore void because of the rule against perpetuities. *Miller*, §§ 365-369. Appellants' position would be no better if the remainders were void *ab initio* than if they failed because none of Mr. Scribner's children or grandchildren survived Miss Rogers.

2. If the remainders failed to take effect, was the undisposed of interest left in Mr. Scribner a mere possibility of reverter or a reversion? Although all parties seem to contend or assume that it was a mere possibility of reverter, we think it was an equitable reversion.

In *Marbury v. Bouse*, 187 Md. 106, 109, 48 A. 2d 582, 585, 166 A. L. R. 1272, a testator left the residue of his estate in trust for his wife for life, then for named children

for life, with remainders to the issue, if any, of each child, otherwise to the survivors. Upon the death of the last survivor without issue there was partial intestacy. We said, "We are here dealing with an absolute reversion and not a mere possibility of reverter, as in *Conner v. Waring*, 52 Md. 724. The distinction was fully recognized in *Perkins v. Iglehart*, 183 Md. 520, 542, 39 A. 2d 672, although the decision in that case was also based upon statutory changes in the law of inheritance and distribution antedating the execution of the will. In *Hammond v. Piper*, 185 Md. 314, 44 A. 2d 756, and in the other cases there cited, it was held that the rule of *Conner v. Waring* was applicable by way of analogy to contingent remainders as well as executory devises, in the case of wills taking effect prior to the statutory changes above mentioned. But it was intimated that intermediate heirs would not have been excluded, had there been an intestacy." In *Connor v. Waring* and *Hammond v. Piper*, as in *Marbury v. Bouse*, there were valid contingent remainders in fee to issue after life estates; in *Perkins v. Iglehart* there were no valid remainders to issue but two successive equitable life estates, the second to a son's widow, who might possibly be a person not *in esse* at the death of the testatrix. Since *Conner v. Waring* and before the three recent cases above cited this court has repeatedly recognized undisposed of interests, in estates held by trustees in fee, as equitable reversions, alienable, devisable and also descendable from heir to heir, not subject to the rule *seisina facit stirpitem*. *Heald v. Heald*, 56 Md. 300, 311, 312; *Mines v. Gambrill*, 71 Md. 30, 36, 18 A. 43 (personal property) ; *Abell v. Abell*, 75 Md. 44, 63, 23 A. 71, 25 A. 389. In *Cowman v. Classen*, 156 Md. 428, 438, 439, 144 A. 367, it was held that the common law rules as to seisin are not applicable to equitable estates (in that case, an equitable remainder), since the seisin in the trustees.

In *Connor v. Waring*, 52 Md. 724, 734, it was held that, notwithstanding the rule *seisina facit stirpitem*, the original owner or the intermediate heirs of a reversion

can alien or devise it, thereby creating a new stirps of descent. It was, however, also said that the devise there in question, "when taken in connection with other portions of the will as manifesting the intent, clearly vested the legal fee in the trustees and the heirs of the survivor; but it was a determinable fee, and, consequently, as soon as the death of the equitable life tenant occurred, without having had issue to take the remainder, that event defeated and determined the estate in law conferred upon the trustees, and it became then vested, by way of reverter, in the heirs-at-law of the original donor of the power". Whether the "undisposed of property" (52 Md. at page 732) was an equitable reversion was not considered, evidently because the appellant did not ask such a construction of the wills in question but asserted only her title at law and contended that the reversionary interest (*Restatement, Property,* § 154; *Perkins v. Iglehart,* 183 Md. 520, 542, 543, 39 A. 2d 672), (*a*) was a possibility of reverter and (*b*) as such, was devisable. This court accepted the appellant's premise and rejected her conclusion. If the premise had been disputed, no prior or subsequent case would now support it. In the case at bar appellants refer to Mr. Gray's discussion of *Conner v. Waring,* in which he remarked that "the trustees had a fee simple absolute, which, on the contingency that had occurred, they held subject to a resulting trust in favor of the testator's heirs", and that "the heirs were undoubtedly entitled, but it was under a resulting trust and not by possibility of reverter." *Gray, Rule Against Perpetuities,* 4th Ed., § 40.9. The resulting trust arises with respect to the equitable reversion.

Since the equitable reversion was left in Mr. Scribner at the time of the execution of the deed, it passed successively under his will, the wills of his devisees, Mrs. Mead and Henrietta E. Scribner, and their devisees, Frederick Mead, Mrs. Abbey and Miss Rogers. Appellants have no interest in this reversion.

3. If Mr. Scribner's reversionary interest had been a possibility of reverter (which we hold it was not), would it have passed under the wills of Frederick Mead, Mrs. Abbey and Miss Rogers, who were Mr. Scribner's heirs at the time of the passage of the Act of 1908, ch. 84 (Code Art. 93, sec. 332) and at their respective deaths? We think it would have so passed.

"If one who has an estate in fee simple creates a determinable fee in another, he has thereafter merely a possibility of reacquiring the land by reason of the occurrence of the contingency named or indicated, and this possibility is known as a possibility of reverter. Thus where land is granted for certain purposes, as for a church, and it is the grantor's intention that it shall be used for that purpose only, and that on the cessation of such use, the estate shall end, without any re-entry by the grantor, a possibility of reverter arises. At common law such a right is not an estate, present or future, but is, as its name indicates, a mere possibility of acquiring an estate, and is not generally assignable, nor devisable; * * *. The right of re-entry for breach of a condition, annexed to an estate in fee simple, is sometimes referred to as a possibility of reverter, or as 'a possibility of forfeiture'. * * * The grantor of an estate in fee on condition, having no right or interest left in the property other than the mere chance of regaining it because of a breach, cannot alien such chance or right, except by statutory power, but must either release it to the owner of the property, or upon his own death let it pass to his heirs. These are the only two dispositions he can make—it cannot be sold, given away or otherwise aliened; *Reeves, Real Property,* secs. 722, 869". *Miller, supra,* § 210 and note 2. See also *Tiffany, Real Property,* 3d Ed., § 314. In the two sentences last quoted the illustration seems to be a "right of entry for condition broken" rather than a "possibility of reverter" in the strict narrower sense, but these statements are applicable to possibilities of reverter in either the narrower or the broader sense. The common law forbade the transfer of possibilities of reverter to dis-

courage maintenance and champerty. *Cf. Copenhaver v. Pendleton,* 155 Va. 463, 155 S. E. 802, 77 A. L. R. 324 (broader definition).

In Maryland by the Act of 1908 the common law rule against transfer of possibilities of reverter by devise has been reversed. "All lands, tenements and hereditaments * * * which would, in case of the proprietor dying intestate, descend * * * and all rights of entry for condition broken, and all rights and possibilities of reverter, shall be subject to be disposed of, transferred and passed by his or her last will or codicil * * *." Art. 93, sec. 332.

Appellants contend (*a*) that the Act of 1908 is not retroactive and therefore is not applicable to a reversionary interest left undisposed of in 1859 and (*b*) that until Miss Rogers's death in 1944 there never was any possibility of reverter in any of Mr. Scribner's intermediate heirs. The latter contention confuses a possibility of reverter with an actual reverter and would nullify the plain words of the statute. A reversionary (*i. e.,* undisposed of) interest, whether a reversion (a vested estate) or a possibility of reverter (no estate at all), always has an owner or "proprietor". The statute provides that *all* rights and possibilities of reverter shall be subject to be disposed of by the proprietor's will—not the first proprietor's but any proprietor's. In *Perkins v. Iglehart* it was held that, "This Act [of 1908] permits William James Rucker [life tenant and heir] to devise a possibility of a reverter [after his death]". 183 Md. at page 542, 39 A. 2d at page 683.

The Act of 1908 is not retroactive; it does not apply to wills that became effective before the act. But it is not inoperative as to devises after 1908 of possibilities of reverter that existed before 1908. Appellants rely on the statement in *Perkins v. Iglehart,* "This Act [of 1908] was not, of course, before the Circuit Court of Appeals in *Shirk v. Lee, supra* [4 Cir., 3 F. 2d 256], because the will in question was executed long prior to the enactment." 183 Md. at page 542, 39 A. 2d at page 683. This

statement is applicable not only to the original will (effective in 1865) construed in *Shirk v. Lee,* which left an interest (held to be a possibility of reverter) undisposed of, but also to the only will (effective in 1891) which could have transferred the possibility of reverter if the Act of 1908 had been in effect.

In *Hammond v. Piper, supra,* it was held that the Act of 1916, ch. 325 (Art. 46, sec. 1), is not applicable to descent of a contingent remainder created by a will of which took effect before the passage of the Act. Though the question of descent of contingent remainders, and the "anomalous" rule adopted and extended in Maryland by analogy to "the ancient doctrine that seizin determines the stock of descent" (185 Md. at page 320, 44 A. 2d at page 759), was originally a question of law, the rule was also essentially a rule of construction, since a testator, after as well as before the Act of 1916, in creating a contingent remainder, can make his own provisions for devolution of the remainder in the event of the death of a named remainderman. In the absence of such provision by will, the rules of law and construction in force when the will takes effect become a part of the will. Consequently after the will takes effect, no change of law can change the will. A possibility of reverter is not created by will or deed. It is a reversionary interest, not created at all but left undisposed of by the will or deed which disposes of other interests in property already owned. The common law forbade transfer by will of such a reversionary interest. The Act of 1908 does not change the interest, but removes the common law ban and permits transfer by will.

If, therefore, Mr. Scribner's reversionary interest had been a mere possibility of reverter, it would have passed under the wills of Frederick Mead, Mrs. Abbey and Miss Rogers, reaching the same end, by a somewhat different route, as if it was (as we hold) an equitable reversion.

*Decree affirmed, with costs.*

348

ON MOTION FOR MODIFICATION AS TO COSTS.

Per Curiam.

The same doubts, as to questions of law and construction of the deed, which warranted institution of the instant proceedings by the trustee also warranted the appeal. In the circumstances we think the costs, above and below, should be paid out of the estate.

> *Decree affirmed, costs to be paid out of the trust estate under the deed.*