BOYNTON *v.* BARTON, ADMINISTRATOR

[No. 118, October Term, 1948.]

*Decided March 11, 1949.*

584

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*William L. Marbury* and *G. Van Velsor Wolf*, with whom were *Marbury, Miller & Evans* and *John W. T. Webb* on the brief, for the appellant.

*Carlyle Barton* and *Stuart E. Brown, Jr.*, with whom were *Niles, Barton, Morrow & Yost* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree of the Circuit Court of Baltimore City, construing the will of John E. Hurst, upon petition of the Mercantile Trust Co., trustee.

John E. Hurst died on January 6, 1904, leaving a will which was duly admitted to probate. Item 14 of his will reads as follows:

"All the rest and residue of my estate and property of whatever kind and wherever situated, of which I may die seized and possessed or to which I may then in any manner be entitled, I desire to be divided by my Executors into as many equal parts or shares as may be required to provide one share for each of my then living children and one share for the then living descendants of each deceased child of mine: Provided, however, that from each share is to be deducted any amount that may appear on my books as charged against such share; and provided also that while each of my sons shall be entitled to receive his share absolutely, the share of each of my daughters and also the share of the descendants of each deceased child shall be paid over to the Mercantile Trust and Deposit Company of Baltimore, to be held by said Company upon the following trusts—*viz.:*

"(a) To pay to each of my daughters during her life the income from her share of my estate, and if she leaves issue, from and after her death to hold her share for the benefit of such issue in all respects exactly as is hereinafter provided for the share of the descendants of each child of mine who shall have died in my lifetime leaving issue living at my death; but the share of any of my daughters who shall leave no issue shall at her death be distributed among and form part of the other shares or share into which the said residue of my estate shall have been divided by my executors.

(b) My said Trustee shall apply to the support, maintenance and education of [the descendants of] each deceased child aforesaid so much as it may deem necessary of the income from their share of my estate, until the oldest of them shall reach the age of twenty-one years or until the death of the last survivor of such descendants who may have been living at the death of my said child, whichever shall first happen, when I desire that the principal of such share shall be transferred and paid over, equally *per stirpes* and not *per capita*, to the then living descendants if any of my said deceased child; or if there be no such descendant, shall be distributed among and form part of the other shares into which the residue of my estate shall have been divided, exactly as I have above provided for the share of any daughter who dies without issue."

It is conceded that there was an obvious omission in paragraph (b) of the words "the descendants of" after the words "support, maintenance and education of," which should be supplied from the context.

Mr. Hurst was survived by three sons and five daughters. Accordingly, his residuary estate was divided into eight parts, three of which were paid over to the sons, absolutely, and five of which were held in trust during the respective lives of the daughters. The youngest daughter, Sallie W. Hurst Smith, outlived all the other children of John E. Hurst and died on October 26, 1947, without issue. At the time of her death each of the

other daughters had died leaving children who had reached the age of 21 years, so that all the other trusts had terminated and the shares had been distributed. It is conceded that the share of Mrs. Smith must be divided into seven parts. The only question presented is as to the distribution of the one-seventh part passing to the descendants of Julia B. Wilkin, another daughter of Mr. Hurst, who died May 21, 1914, leaving two children, Louise W. Wilkin (now Boynton) and J. Hurst Wilkin. Mrs. Boynton is still living. J. Hurst Wilkin survived his mother and was over 21 years of age at the time of her death. He died April 17, 1925, leaving a widow, Sarah Sides Wilkin, sole legatee under his will, but no descendants. The appellee, Carlyle Barton, administrator *c. t. a.*, is the personal representative of his estate. The Chancellor decreed that the part in question should be divided equally between Mrs. Boynton and the administrator *c. t. a.* of J. Hurst Wilkin.

The problem of the construction of the will of John E. Hurst was before the Circuit Court of Baltimore City in 1928. Sarah A. Hurst, a sister of John E. Hurst, died August 2, 1927, and the question was raised by the trustee as to the proper distribution of a fund set aside for her in item 9 of his will in the following language:

"9. To my sisters Sarah A. Hurst and Margaret E. Harmon, each the sum of ten thousand dollars for life, which, however, is to be credited to them respectively on the books of John E. Hurst and Company as a loan at six per cent interest, and the interest is to be paid monthly. On the death of either of my said sisters the principal sum so standing to her credit is to form part of my residuary estate hereinafter disposed of."

The chancellor held that under item 14 the remainder falling into the residue under item 9 should be divided into eight parts, and that the appellee herein was entitled to one-half of the part that would have been distributable to J. Hurst Wilkin had he survived Sarah A. Hurst, and decreed accordingly. The present appellant did not appeal from that decree. The appellee contends that decree

is *res judicata* of the present controversy.

In the 1928 proceeding the Chancellor found that the remainder vested, under the residuary clause, in the testator's sons who survived him, absolutely, and in his daughters who survived him in trust for their respective lives. His daughter Mrs. Wilkin had died in 1914, survived by J. Hurst Wilkin, who was over twenty-one, and Mrs. Boynton, but J. Hurst Wilkin had died in 1925, and hence did not survive Sarah A. Hurst. In awarding a share to the administrator *c. t. a.* of J. Hurst Wilkin, the decree adjudicated that the interest of J. Hurst Wilkin in this remainder was vested, or at least not contingent upon his surviving Sarah A. Hurst. The appellant contends that there is a recognized distinction between a vested remainder and one that is contingent as to the persons taking, and that the former decree is not controlling. We think we must examine item 14 in the instant case, at least for the purpose of determining whether a different intention as to the present interest can be gathered from the instrument.

Under item 14 Sallie W. Hurst Smith acquired an equitable life estate. Upon her death leaving descendants it was provided that the trust was to continue for such descendants "until the oldest of them shall reach the age of twenty-one years or until the death of the last survivor of such descendants who may have been living at the death of my said child, whichever shall first happen, when I desire that the principal of such share be transferred and paid over, equally *per stirpes* and not *per capita,* to the then living descendants if any of my said deceased child." The quoted clause was made equally applicable to the descendants, living at the time of the testator's death, of children who predeceased the testator. This provision never came into play, so far as Mrs. Smith was concerned, because she died without issue. On the other hand, it was provided in the case of any daughter dying without issue, that her share "shall at her death be distributed among and form part of the other shares or share into which the said residue of my

estate shall have been divided by my executors." Likewise in the case of their being no descendants of children predeceasing the testator, living at his death, it was provided that the principal of the share should be "distributed among and form part of the other shares into which the residue of my estate shall have been divided, exactly as I have above provided for the share of any daughter who dies without issue".

The remainder over upon the death of Mrs. Smith without issue was clearly contingent as to the event. *Hammond v. Piper,* 185 Md. 314, 317, 44 A. 2d 756, 758, and cases cited. In that case we held that "the contingency was as to the event, and not as to the takers"; and that "remainders over to the 'other children' were not gifts to a class, but were gifts to persons designated by description," with the result that they were both descendable and devisable. See also *Simon v. Safe Deposit & Trust Co.,* 190 Md. 468, 59 A. 2d 199. The old rule of descent that excludes an intermediate heir, discussed in those cases, has no application here. In the instant case the persons who would take upon the happening of the contingency could not be ascertained at the time of the testator's death as in *Hammond v. Piper, supra,* but they were ascertainable at the death of Mrs. Wilkin, at which time her son was over twenty-one years of age, and both Mrs. Boynton and J. Hurst Wilkin were living. The appellant contends that the alternative contingent remainder, to the descendants *per stirpes* of Mrs. Wilkin, was a gift to a class, and that the right to share in the gift over was contingent upon survivorship to the date of Mrs. Smith's death.

The appellant relies strongly upon the case of *Demill v. Reid,* 71 Md. 175, 17 A. 1014. In that case there were remainders, after a life estate to a grandson, to the children of the life tenant, or if he left none, then to the children of the testator's son Henry. These remainders described as alternative, contingent remainders. At the testator's death Henry had six children, three of whom survived the life tenant, as did Henry himself. It was

held, 71 Md. at page 193, 17 A. at page 1017, that only "those who were children of Henry * * * at the time the contingency happened" could take, and "we find nothing in other parts of the will to warrant the inference that the testator intended anything else, nor any necessity for putting a different construction on his language." In *Larmour v. Rich*, 71 Md. 369, 384, 18 A. 702, 704, decided by the same court it was said: "a future period having been fixed, and the time of its occurrence having been uncertain, until the death of Mrs. Miller [the life tenant], the remainders were clearly alternative contingent remainders, or contingent remainders with a double aspect, as they are sometimes called; * * * these remainders never vested in Louisa K. Miller * * * because she died in the lifetime of her mother, before the period fixed for the remainders to vest." These cases indicate that the question is one of intention which may prevail, in a particular case, over the rule of early vesting. In both cases, however, the choice was between a vesting at the death of the testator, or settlor, and at the death of the life tenant when the gift over became ripe for distribution.

The definition of class gifts and the rule of *Demill v. Reid* were fully discussed in the recent case of *Evans v. Safe Deposit & Trust Co.*, 190 Md. 332, 339, 58 A. 2d 649, 652. After citing various criticisms of the rule, Judge Markell, speaking for the court, said: "For the particular purposes of (a) alienation, subject to survival (*Hans v. Safe Deposit & Trust Co.*, 178 Md. 52, 62, 12 A. 2d 208, 213), and (b) construction and application of a tax statute (*Safe Deposit & Trust Co. [of Baltimore] v. Bouse*, 181 Md. 351, 29 A. 2d 906), we have held that a 'future executory estate or interest' or a remainder to grandchildren living at the death of a life tenant is 'vested' in interest, subject to be divested, during the life tenancy. These cases are not to be regarded as overruling *Demill v. Reid* and the rules of construction of class gifts, which have been too long and too often approved by this court to be now overruled.

"However the Jarman definition of a class gift and the effect of such gift in *Demill v. Reid* are both predicated on the intention of the testator to make a gift to 'a body of persons uncertain in number at the time of the gift, to be ascertained at a future date.' Without such an intention, there is no class and the lore of class gifts, including *Demill v. Reid,* is irrelevant. *Cf. Restatement, Property,* § 279, comment b. The 'antithesis' of a class gift 'is a gift to an individual either by name or by some description sufficiently explicit to permit the donee to be identified as the particular individual for whom the gift was intended.' *Boulden v. Dean,* 167 Md. 101, 106, 173 A. 26, 28. The last case in which *Demill v. Reid* was cited by this court involved such 'gifts to persons designated by description,' *viz.,* contingent remainders to 'my other children,' who elsewere in the will were mentioned by name. *Hammond v. Piper,* 185 Md. 314, 318, 44 A. 2d 756, 757. Though *Demill v. Reid* has frequently been cited by this court, the result in that case has seldom been reached in subsequent cases. * * * In the later cases, and some earlier, when gifts were not expressly conditioned upon survival, *e. g.,* by the words 'then living' or other unequivocal words, they were, by the rule of early vesting or by analogous reasoning, held not to be class gifts, or by early determination of class membership they became vested and ceased to be class gifts." We found it unnecessary to decide whether the deed in the *Evans* case did make a class gift, conditioned upon survival, as the case was decided upon other grounds.

In the case at bar, while the gift over is not to designated persons, neither does it employ the word "children," which might import a class, as in *Demill v. Reid, supra.* The direction is that it be "distributed among and form a part of the other shares into which the said residue of my estate shall have been divided," that is to say, added to the share set aside for Mrs. Wilkin during her life, and upon her death leaving descendants the oldest of whom is over twenty-one, to such descendants

*per stirpes,* "then living." The words "then living" seem clearly to refer to descendants living at the death of Mrs. Wilkin, and not to descendants living at the happening of the contingency whereby the share was augmented. *Cf. Marbury v. Bouse,* 187 Md. 106, 111, 48 A. 2d 582, 584, 166 A. L. R. 1272. In short we find in the language of the will itself no intention that the gift over is conditional upon survivorship to the date of the happening of the contingency, but on the contrary a positive indication that the children of Mrs. Wilkin, living at her death, should take. If this could properly be described as a class gift, at the time of the testator's death, its membership was fixed and determined, and it ceased to be a class, at Mrs. Wilkin's death. At that point it was contingent only as to the event. In *Reese v. Reese [Chism v. Reese],* 190 Md. 311, 319, 58 A. 2d 643, 647, 648, we said: "The testator has the right to fix the period of vesting, and if he does so with reasonable certainty, his intention will be carried out. He can postpone the period of vesting and make it depend upon a contingency, and, if he does so, the estate will not vest until the happening of such contingency. *Cherbonnier v. Goodwin,* 79 Md. 55, 58, 28 A. 894. The most important rule of construction on the question when an estate was intended to vest is that the law favors the earliest vesting of estates. Where there is more than one period mentioned in a will, the court will generally adopt the earlier one unless this construction is contrary to the testator's intention as disclosed by the terms of the will. *Lee v. Waltjen,* 141 Md. 450, 119 A. 246; *Curtis v. Maryland Baptist Union Ass'n,* 176 Md. 430, 438, 5 A. 2d 836, 121 A. L. R. 1516; *Miller, Construction of Wills,* sec. 227."

In that case we held that "The remainder to the issue of Charles and Francis Reese necessarily was contingent until the death of John without children, but there is no indication in the will that the testator intended the determination of the 'issue' of Charles and Francis to be postponed until the death of John without children." See also *Bowerman v. Gibson,* 144 Md. 1, 8, 123 A. 573;

592

*Lewis v. Payne,* 113 Md. 127, 134, 77 A. 321, 30 L. R. A., N. S., 908; *Slingluff v. Johns,* 87 Md. 273, 283, 39 A. 872.

We think the decree of the chancellor in the instant case was correct and should be affirmed.

*Decree affirmed, costs to be paid out of the fund.*